[No. 70212-8. En Banc.]
Argued May 8, 2001. Decided September 6, 2001.

JOSEPH P. DAVIS, *Petitioner*, v. THE STATE OF WASHINGTON, *Respondent.*

*Stephen L. Bulzomi* (of *Messina Law Firm*), for petitioner.

*Christine O. Gregoire, Attorney General,* and *Glen A. Anderson, Assistant,* for respondent.

JOHNSON, J. — The issue in this case is whether tire tracks made in sandy terrain by recreational riders leading to a naturally created drop-off constitute an artificial condition for purposes of qualifying as an exception to Washington's recreational use immunity statutes. *See* RCW 4.24.200, .210. We hold the injury-causing condition in this case is not artificial and the State is not liable for the petitioner's injuries.

## FACTS

Joseph Davis (Davis) was injured after launching off a 20- to 30-foot drop-off while riding his motorcycle at the Beverly Dunes Recreation Area (Beverly Dunes). Beverly Dunes is located in central Washington and is owned and operated by the Washington State Department of Natural Resources (State). The sand dunes are left in their natural state and the public is permitted to ride recreational vehicles in the area free of charge.

On May 21, 1995, Davis and two friends were riding motorcycles along the sand dunes at Beverly Dunes when they encountered a relatively flat, wide open area with a slight incline. Both Davis and Matthew Atterson stated they were following a trail of tire tracks leading across the area. Looking straight ahead, it appeared to them the

terrain continued as a straightaway for some distance. After a short distance, however, the tracks suddenly fell away and Davis' motorcycle launched over a steep drop-off. After falling 20 to 30 feet, Davis landed on hard, compacted sand below. As a result, Davis suffered a broken spine, resulting in paraplegia and blindness.

A sudden drop-off of 20 to 30 feet is uncharacteristic for Beverly Dunes. Typically, the terrain is relatively flat and sandy, consisting of rolling dunes with gradual elevation changes. There were no warning signs posted before the drop-off. Davis' human factors expert stated that in his expert opinion the area where the incident occurred had been changed from its natural condition by the use of recreational vehicles creating tracks leading to the drop-off. Photographs included in the record show a flat area of land with numerous tire tracks traveling in various directions, including some heading toward the drop-off.

Davis filed this suit against the State. The State moved for summary judgment, asserting it was immune from liability under Washington's recreational use immunity statutes, RCW 4.24.200 and RCW 4.24.210. The trial court granted summary judgment, concluding the injury-causing condition was not artificial and, therefore, did not qualify as an exception to the statutes. The Court of Appeals affirmed, finding Davis failed to show artificiality and failed to show the State knew about the condition. *Davis v. State*, 102 Wn. App. 177, 6 P.3d 1191 (2000). Davis petitioned this court for review, which we granted.[1]

## ANALYSIS

Generally, the duty of care a landowner owes to a person depends upon whether the person is an invitee, a licensee, or a trespasser. *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 41, 846 P.2d 522 (1993). At common law, the recreational

---

[1] Because this is a review of a summary judgment, we engage in the same inquiry as the trial court. We consider all the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party, in this case Davis. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

entrant was characterized as a "public" invitee to which landowners owed a duty of ordinary care to keep premises in a reasonably safe condition. *Egede-Nissen v. Crystal Mountain, Inc.*, 93 Wn.2d 127, 131-33, 606 P.2d 1214 (1980). This included an affirmative duty to inspect the premises and discover dangerous conditions. *Van Dinter*, 121 Wn.2d at 42.

■ Washington's recreational use statutes were intended to modify the common law duty owed to public invitees so as to encourage landowners to open their lands to the public for recreational purposes. *See* RCW 4.24.200. To that end, RCW 4.24.210(1) provides:

> [A]ny public or private landowners or others in lawful possession and control of any lands . . . who allow members of the public to use them for the purposes of outdoor recreation, which term includes . . . pleasure driving of off-road vehicles . . . shall not be liable for unintentional injuries to such users.

■ Although landowners generally are not liable for the injuries incurred by recreational users of their land, there are three limited circumstances under which liability will attach. Landowners may not escape liability if: (1) a fee for the use of the land is charged; (2) the injuries were intentionally inflicted; or (3) the injuries were sustained by reason of a known dangerous artificial latent condition for which no warning signs were posted. RCW 4.24.210(1), (3). Here, the State did not charge a fee for the use of Beverly Dunes. Davis' injuries were not intentionally inflicted. There were no warning signs posted. Thus, the only issue is whether Davis' injuries were sustained by reason of a known dangerous artificial latent condition.

■ In order to establish a recreational use landowner's liability, each of the four elements (known, dangerous, artificial, latent) must be present in the injury-causing condition. *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 920, 969 P.2d 75 (1998). The elements modify the term "condition," rather than modifying one another. *Ravenscroft*, 136 Wn.2d at 920. If one of the four elements is not present, a claim cannot survive summary judgment.

For purposes of RCW 4.24.210, the meaning of "artificial" is the ordinary meaning. *Ravenscroft*, 136 Wn.2d at 922. As defined in *Webster's*, "artificial" means "contrived through human art or effort and not by natural causes detached from human agency : relating to human direction or effect in contrast to nature: **a:** formed or established by man's efforts, not by nature." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 124 (1986). Under the facts of this case, there is no question the drop-off is a naturally occurring condition. However, Davis argues the tracks leading to the drop-off were a human made alteration to the natural contours of the sand dunes that became part of the injury-causing condition, transforming it into an artificial condition. Although we agree the tire tracks are artificial,[2] we do not find the tracks and the drop-off so closely related as to create a single artificial condition for purposes of qualifying as an exception to the recreational use immunity statutes.

Davis argues our recent decision in *Ravenscroft* supports his argument that the injury-causing condition is artificial. We do not agree. In *Ravenscroft*, the plaintiff was injured while boating on the Long Lake reservoir when the boat hit a submerged tree stump. The impact caused the outboard motor to flip onto the boat, hitting the plaintiff in the shoulder. *Ravenscroft*, 136 Wn.2d at 915. In determining whether the injury-causing condition was artificial, we defined an injury-causing condition as "the specific object or instrumentality that caused the injury, viewed in relation to other external circumstances in which the instrumentality is situated or operates." *Ravenscroft*, 136 Wn.2d at 921. We explained that in Ravenscroft's case the tree stump was the specific object causing the injury and the external circumstance was the landowner's artificial alteration of that stump by manipulation of the watercourse and water

---

[2] The Court of Appeals concluded the injury-causing condition was not artificial because the tire tracks were not a "purposeful creation." *Davis*, 102 Wn. App. at 188. The correct inquiry is not whether a condition was intentionally created; rather, the proper inquiry is whether the injury-causing condition was the product of human efforts in contrast to a naturally occurring condition. Even unintended human changes to the land that alter something from its natural state can be artificial.

level. *Ravenscroft*, 136 Wn.2d at 921. Thus, the injury-causing condition included both the stump and the artificial control of the water flow and water level.

Davis argues the injury-causing condition in his case is similar to that in *Ravenscroft*. He argues the specific object that caused his injuries was the 20- to 30-foot drop-off, and the tracks left by recreational users leading to the drop-off were the "external circumstances." He asserts that taken together they amount to an artificial condition. We disagree.

The facts in this case are distinguishable from *Ravenscroft*. The artificial condition in *Ravenscroft* was unique. There, the defendant's artificial control of the watercourse was an external circumstance that physically altered the condition of the tree stump so as to transform the condition into a hidden and dangerous one. The artificial external circumstance was so closely related to the natural object that it completely altered the natural condition of that object. The two conditions could not reasonably be analyzed as independent circumstances. A person walking up to the stump could not have viewed it in its natural condition. This close relationship between a specific injury-causing condition (the tree stump) and an artificial external circumstance (the shifting of the water level and watercourse so as to submerge the stump) is rare. Consequently, the analysis in *Ravenscroft* will rarely apply to other situations.

We are not presented with one of those rare cases here. Unlike the condition in *Ravenscroft*, the external circumstance (the tire tracks) did not transform the natural state of the specific object causing Davis' injuries (the drop-off). The tracks and the drop-off are not so closely related that they cannot be encountered independently. The record shows the flat open space had a variety of tire tracks leading in all different directions. Some of these tracks led to the drop-off. While these tracks may have altered the natural condition of the flat open space, they did not physically alter the natural condition of the drop-off to such

an extent as to transform it from a natural state to an artificial one. If Davis had walked up to the drop-off following a set of artificial tire tracks, he still would have encountered the drop-off in its natural condition.

Unlike the stump in *Ravenscroft*, nothing about the artificial tire tracks transformed the drop-off into an unnatural condition. The fact that Davis and his friends were following a set of artificial tracks across the flat open space to the edge of the drop-off does not alter the fact the drop-off itself remained in its natural state. The relationship between the tracks and the drop-off is more attenuated than the relationship between the stump and the artificial control of the watercourse and water level in *Ravenscroft*.

## CONCLUSION

In order to assert a valid recreational use landowner's liability claim, as existed in *Ravenscroft*, a plaintiff must establish that the artificial external circumstance so changed a natural condition it is unreasonable to distinguish the two when analyzing whether the condition was artificial. Here, Davis fails to establish that the tire tracks altered the drop-off so as to transform it from its natural condition into an artificial one. Consequently, we find Davis has not proved the injury-causing condition in his case was artificial; therefore, the State is immune from liability.

The Court of Appeals is affirmed.

ALEXANDER, C.J., and SMITH, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J. (concurring) — The majority uses the definition of "artificial" adopted in *Ravenscroft v. Washington Water Power Co.*, 136 Wn.2d 911, 969 P.2d 75 (1998) for determining whether a condition is "artificial" for purposes of the recreational use statute, RCW 4.24.210. The majority then distinguishes *Ravenscroft*, adding a gloss that does not appear in that case, i.e., the inquiry of how close the

relationship is between an "artificial external circumstance" and the immediate condition causing the injury. Majority at 618. Of course, this qualification is needed to avoid the unreasonable result that would otherwise follow in this case. The majority's struggle with *Ravenscroft* bears out the prediction in my dissent in *Ravenscroft* that the decision would provide no clear guidance for determining whether a condition is "artificial." *Ravenscroft*, 136 Wn.2d at 932, 936 (Madsen, J., dissenting).

I recognize that given the flawed analysis in *Ravenscroft*, the majority has arrived at the best solution it can short of overruling the case. I believe the better course is to accept that *Ravenscroft* contains a flawed analysis, and that it will be necessary to distinguish it far more often than apply it in order to carry out the purpose of the recreational use statute. The court should abandon *Ravenscroft* altogether and apply a clear, narrower definition of "artificial condition." As I proposed in my dissent in *Ravenscroft*, this court should confine the definition of "artificial" for purposes of the statute to conditions which are actually man-made and not occurring in nature. The inquiry should also focus first on what actually constitutes the injury causing condition, rather than on all surrounding conditions.

This approach better serves the purpose of the recreational use statute. The aim of the recreational use statute is to encourage those in possession or control of land and water areas to make them available for recreational use by the public, and to protect the owners of recreational use property from liability. RCW 4.24.200. That purpose is thwarted when the meaning of "artificial condition" includes any man-made change in a recreational use area, or any "condition contrived through human effort." *Ravenscroft*, 136 Wn.2d at 933 (Madsen, J., dissenting).

Here, the sand dune drop-off was the injury causing condition. The clear answer to the question of "artificiality" in this case is that the sand dune drop-off was in its naturally occurring state. Sand dunes naturally shift, and those along the Columbia River are subject to considerable

wind that causes shifting. As a matter of law, the injury causing condition was not artificial, as the majority concludes.

The fact that tracks were left by other users does not alter that conclusion. First, the mere use of the property as recreational property should not create the "artificiality" giving rise to liability. Otherwise, any alteration in the natural state brought about by recreational use could lead to liability despite the purpose of the statute to encourage opening up lands and waters for recreational use. If the use itself can create the artificial condition, and thus expose the owner to liability, a disincentive, rather than an incentive, to open up lands and waters results. Second, the tracks of other users were not, as the Court of Appeals observed, a purposeful effort to alter the nature of the sand dunes, and indeed, they did not create or alter the drop-off at all. Finally, the tracks were not the injury causing condition, nor should they be viewed as a component of it. The drop-off was the injury causing condition.

This court should acknowledge that the approach followed in *Ravenscroft* is unworkable and inconsistent with the purpose of the recreational use statute. Rather than try to work within its flawed framework, adding additional analytical specifications where needed in order to distinguish it, the court should expressly disapprove its analysis.

I concur in the result reached by the majority.