# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2014 APR 21 AM 9:44
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

| | | |
|---|---|---|
| STEVEN JEWELS, | ) | NO. 69358-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| CITY OF BELLINGHAM, | ) | |
| | ) | |
| Respondent. | ) | FILED: April 21, 2014 |
| | ) | |

LEACH, J. — Steven Jewels appeals trial court orders granting summary judgment to the City of Bellingham (City) under the recreational land use statute, RCW 4.24.210, and denying his motion for reconsideration. Jewels claims that the unpainted extension of a speed bump that he hit while riding his bicycle was a "known dangerous artificial latent condition" under the statute. Because Jewels fails to show that the City had actual knowledge of the injury-causing condition, we affirm.

## FACTS

Cornwall Park is a park open to the public for recreational use without charge. The City owns and maintains the park. On June 30, 2008, while riding his bicycle on a road located in Cornwall Park, Steven Jewels rode over a speed bump at a velocity sufficient to dislodge his water bottle. As he approached a

second speed bump, instead of slowing for it, he attempted to ride around it. As he did this, he encountered an asphalt berm, one to two inches high, that was connected to the second speed bump. The asphalt berm (also known as a water diverter) channels water into a cutout portion of the curb, facilitating drainage off the road. On the date of the accident, the asphalt berm was black: darker in color than the road itself but unpainted. When Jewels tried to bypass the speed bump by going through what he believed was a gap between the speed bump and the curb, the force of the front tire hitting the berm caused him to lose control of his front wheel, which caught in the cutout portion of the curb. This sudden stop threw Jewels from his bicycle and onto the asphalt and curb, broke his front wheel, and caused him injury.

On April 12, 2011, Jewels filed a complaint for personal injuries and damages against the City of Bellingham. The City moved for summary judgment, claiming immunity under the recreational land use statute. The superior court granted the City's motion for summary judgment, finding that the water diverter did not create a known, dangerous, latent condition. On August 24, 2012, the court denied Jewels's motion for reconsideration.

Jewels appeals.

STANDARD OF REVIEW

This court reviews an order of summary judgment de novo, performing the same inquiry as the trial court.[1]

ANALYSIS

Jewels argues that the City cannot claim immunity under the recreational land use statute because the water diverter was a "known dangerous artificial latent condition for which warning signs have not been conspicuously posted."[2] To establish a landowner's liability under this statute, a plaintiff must show that each of the four elements—known, dangerous, artificial, and latent—was present in the injury-causing condition.[3] "If one of the four elements is not present, a claim cannot survive summary judgment."[4] Jewels claims that the injury-causing condition was "clearly latent and deceptive and falls squarely within the statutory exception."

The Washington Legislature enacted the recreational land use statute in 1967 to encourage private and public landowners to open recreation areas to the public without fear of liability for unintentional injuries.[5] This statute "changed the

---

[1] Smith v. Safeco Ins. Co., 150 Wn.2d 478, 483, 78 P.3d 1274 (2003) (citing Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002)).
[2] Former RCW 4.24.210(4) (2003).
[3] Davis v. State, 144 Wn.2d 612, 616, 30 P.3d 460 (2001).
[4] Davis, 144 Wn.2d at 616.
[5] Ertl v. Parks & Recreation Comm'n, 76 Wn. App. 110, 113, 882 P.2d 1185 (1994); Nauroth v. Spokane County, 121 Wn. App 389, 392, 88 P.3d 996 (2004).

common law by altering an entrant's status from that of a trespasser, licensee, or invitee to a new statutory classification of recreational user."[6]  This court construes this statute strictly.[7]

RCW 4.24.210(1) states,

[A]ny public or private landowners . . . in lawful possession and control of any lands . . . who allow members of the public to use them for the purposes of outdoor recreation, which term includes, but is not limited to, . . . bicycling . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

"This statute gives landowners immunity from liability unless (1) a fee is charged, (2) the injury inflicted was intentional, or (3) the injury was caused by a known dangerous artificial latent condition and no warning signs were posted."[8]  Jewels bicycled as a recreational user through Cornwall Park, a public park that charges no fee.  Therefore, RCW 4.24.210, not the common law, controls here.

Washington courts have construed this statute to require that a plaintiff establish actual knowledge, as opposed to constructive knowledge, that a condition is dangerous.[9]  A plaintiff must "'come forward with evidentiary facts

---

[6] Van Dinter v. City of Kennewick, 64 Wn. App. 930, 934-35, 827 P.2d 329 (1992).

[7] Matthews v. Elk Pioneer Days, 64 Wn. App. 433, 437, 824 P.2d 541 (1992).

[8] Van Scoik v. Dep't of Natural Res., 149 Wn. App. 328, 333, 203 P.3d 389 (2009) (citing Davis, 144 Wn.2d at 616).

[9] Gaeta v. Seattle City Light, 54 Wn. App. 603, 609, 774 P.2d 1255 (1989).

-4-

from which a trier of fact could reasonably infer actual knowledge, by a preponderance of the evidence.'"[10] A plaintiff may rely upon circumstantial evidence to establish actual knowledge.[11] When considering whether the condition is dangerous, the court examines "the specific object or instrumentality that caused the injury, viewed in relation to other external circumstances in which the instrumentality is situated or operates."[12] Thus, the water diverter must be viewed in the context of its proximity to the curb cutout to evaluate whether it was a known, dangerous condition. Knowledge in this context would mean that the City knew that the water diverter in proximity to the curb cutout posed a danger to a cyclist choosing to avoid the speed bump to circumvent its speed-reducing effect because riding over the diverter could cause a loss of control resulting in a front wheel becoming trapped in the cutout, producing injury.

Jewels contends that this knowledge can be imputed to the City because it was required to comply with the Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD). The MUTCD applies to traffic control devices, which it defines as "all signs, signals, markings, and other devices used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, highway,

---

[10] Nauroth, 121 Wn. App. at 393 (quoting Tabak v. State, 73 Wn. App. 691, 696, 870 P.2d 1014 (1994)).

[11] Nauroth, 121 Wn. App. at 393.

[12] Ravenscroft v. Wash. Water Power Co., 136 Wn.2d 911, 921, 969 P.2d 75 (1998).

pedestrian facility, or bikeway by authority of a public agency having jurisdiction."[13]

The water diverter's purpose is to facilitate drainage; it was not designed as a means for bicyclists to bypass the speed bump. We decline to adopt Jewels's apparent theory that the City has a responsibility to design a safe way for drivers and riders to deviate from the traveled roadway to avoid its own traffic control measures. Because the injury-causing condition, the water diverter and curb cut in close proximity, was not a traffic control device, the MUTCD standards do not apply here, and we do not impute knowledge to the City from them.[14]

Jewels also argues that the City had actual knowledge that the water diverter was dangerous because the City created this condition. But to establish that the water diverter with an adjacent curb cut was a known condition, Jewels must show that the City knew of the condition and also knew that it was dangerous and latent.[15] The City maintains that it had no knowledge of any other

---

[13] FED. HIGHWAY ADMIN., U.S. DEP'T OF TRANSP., MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES FOR STREETS AND HIGHWAYS, at I-1 (2003 ed., rev. Nov. 2004). This is the edition that applied on the date of the accident.

[14] The MUTCD applies only to public roads. Allemeier v. Univ. of Wash., 42 Wn. App. 465, 471, 712 P.2d 306 (1985). The MUTCD likely applies to the speed bump itself because the road was open to the public and the speed bump functions as a traffic control device. While the parties dispute whether the road is public or private, the issue is irrelevant because the water diverter is not a traffic control device.

[15] Ertl, 76 Wn. App. at 115.

accidents involving the water diverter and the curb cutout. Jewels presents no evidence to refute the City's assertion that it had no actual knowledge of a dangerous, latent condition. The mere fact that an unfortunate event occurs, without more, does not demonstrate knowledge of latent danger.

Where courts have found that a landowner had knowledge of the injury-causing condition, there was evidence that the landowners knew that the condition was dangerous before the condition caused the plaintiff's injury.[16] While Jewels asserts that the City knew that the water diverter needed to be visible because it issued a work order to paint it after his accident, this evidence of subsequent remedial measures is inadmissible under ER 407. Moreover, it does not establish the City's knowledge of any dangerous condition before Jewels's accident.

The dissent assumes that the unpainted diverter alone was a dangerous condition. This position ignores the role of the curb cut and its proximity to the diverter. In other words, the dissent focuses exclusively upon the diverter and fails to examine "the specific object or instrumentality that caused the injury, viewed in relation to other external circumstances in which the instrumentality is situated or operates,"[17] as required by the applicable case law.

---

[16] Cultee v. City of Tacoma, 95 Wn. App. 505, 517-18, 977 P.2d 15 (1999); see also Tabak, 73 Wn. App. at 696-97.

[17] Ravenscroft v. Wash. Water Power Co., 136 Wn.2d 911, 921, 969 P.2d 75 (1998).

Because Jewels cannot establish actual knowledge, his claim fails, and we need not reach the issue of whether the condition was latent or dangerous.[18]

## CONCLUSION

Because the recreational land use statute applies to this case and Jewels fails to demonstrate the City's actual knowledge of any dangerous, latent condition, we affirm.

*Leach, J.*

WE CONCUR:

*Cox, J.*

_____

[18] See Ertl, 76 Wn. App. at 115.

Jewels v. City of Bellingham, 69358-1-I

BECKER, J. (dissenting) — I respectfully dissent from the majority's conclusion that Steven Jewels' negligence suit against the City of Bellingham is barred by the recreational use immunity statute, RCW 4.24.210. As the majority opinion interprets the requirement of actual knowledge, a landowner will never be liable for injury on recreational land until a previous accident or complaint shows a known condition is dangerous. This is not the law. Actual knowledge exists where, as here, the landowner itself creates the dangerous condition.

The southern access road into Cornwall Park, a city park in Bellingham, runs slightly downhill into a parking lot about 1,000 feet from the entrance gate. In 2007, the City of Bellingham placed a series of asphalt speed bumps lengthwise across the road as a traffic calming measure. The speed bumps were painted bright yellow. As is typical of such speed bumps, there was a gap of a little more than a foot between each end of the speed bump and the adjacent curb.

At some point after installing the speed bumps, the City decided to address a drainage issue by diverting water on the road off to the right side through a hole in the curb. The City accomplished this by extending one end of the second speed bump to the curb, closing the gap. The second speed bump, about 600 feet in from the main road, is in a location shaded by overhanging tree branches. Inexplicably, the City did not paint the extension yellow to match the rest of the speed bump.

On June 30, 2008, cyclist Steven Jewels rode into the southern entrance to the park. Traveling at an appropriate speed, he went over the first speed bump and was jarred by the abruptness of the impact. As he approached the second speed bump, he did not see the unpainted extension. He steered his bicycle rightward, toward the perceived gap, to avoid having to go over the speed bump. When he rode into the unpainted section, the force pushed his front wheel sideways into the curb cut. Jewels was launched off of his bicycle and landed violently on the cement road.

The next day, July 1, 2008, the City issued a work order for Cornwall Park entitled "Safety Hazard." The work to be performed was described as follows: "The 2d speedbump in Cornwall South was only partly painted. A section next to the shoulder area was not painted and a bicyclist did not see that it was part of the speed bump. He hit it and took a nasty fall from his bike. Please paint entire speed bump and make it visible." As a result of the work order, the unpainted section was painted yellow like the rest of the speed bump.

Entrance into Cornwall Park is free, and there were no warning signs posted. Therefore, the only issue under the statute is whether Jewels' injuries were sustained by reason of a known dangerous artificial latent condition. RCW 4.24.210; Davis v. State, 144 Wn.2d 612, 616, 30 P.3d 460 (2001).

Recreational use immunity is an affirmative defense that must be established by the landowner. Camicia v. Howard S. Wright Constr. Co., ___ Wn.2d ___, 317 P.3d 987, 991 (2014). If there are material issues of fact that prevent the landowner's immunity from being decided on summary judgment, the

trial court must submit them to the finder of fact under appropriate instructions. Camicia, 317 P.3d at 991 & n.4. To be granted immunity on summary judgment, the City had to prove beyond reasonable dispute one of the following facts about the unpainted speed bump extension: it was not known, or it was not dangerous, or it was not artificial, or it was not latent. The City agrees the speed bump extension was artificial but contends it was not known, or dangerous, or latent.

The City would have us hold that the speed bump extension was visible and therefore not latent. The majority wisely does not accept this contention. The City relies on a declaration by an employee who states that the extension was visible, but the employee's observations were made after the extension was painted. Photographs in the record similarly fall short of proving that the color of the extension, before it was painted, contrasted sufficiently with the color of the roadway to make it visible. The existence of a material issue of fact as to visibility is shown by Jewels' declaration that before the paint job, there appeared to be "bare, flat pavement" between the speed bump and the curb. Accordingly, it cannot be said as a matter of law that the unpainted extension was "in plain view," Tennyson v. Plum Creek Timber Co., 73 Wn. App. 550, 872 P.2d 524, 555-56, review denied, 124 Wn.2d 1029 (1994), or that it was "obvious," Gaeta v. Seattle City Light, 54 Wn. App. 603, 610, 774 P.2d 1255, review denied, 113 Wn.2d 1020 (1989). For purposes of summary judgment, we must assume that before it was painted, the speed bump extension was a latent condition.

The majority opinion affirms the order of dismissal on the ground that the City lacked "actual knowledge of the injury-causing condition." Majority at 1. The

majority and the City rely on the fact that Jewels was the first person to report a problem with the obstacle. The City "had no knowledge of any other accidents involving the water diverter and the curb cutout." Majority at 6-7. The majority opinion holds, in other words, that a landowner who creates a dangerous latent condition gets to cause one free accident before liability arises.

The flaw in the majority's reasoning is illustrated by the example of a partially covered well on range land. When the statute was being debated on the Senate floor, a senator used the example of the well to explain the meaning of "known" and "latent." Van Dinter v. City of Kennewick, 121 Wn.2d 38, 45 & n.2, 846 P.2d 522 (1993). If a prior owner digs a well but fails to cover it properly and the present landowner does not know about it, the statute immunizes the present owner from liability. Van Dinter, 121 Wn.2d at 45. But what if the present landowner *does* know about the open well? What if it is the present owner who digs the well and fails to cover it properly? The answer is that liability does arise under the statute—and it arises with respect to the first person who falls into the well.

The requirement of actual knowledge protects the landowner from the common law standard of "knows or should know," under which the landowner's duty to an invitee includes the affirmative duty to inspect the premises and discover dangerous conditions. Morgan v. U.S., 709 F.2d 580, 583 (9th Cir. 1983). In Morgan, an irrigation pump shorted and discharged electricity into a recreational lake, and a canoer was electrocuted. There was no liability under the statute because the owner did not have actual knowledge that the irrigation

4

pump was malfunctioning. Even though a careful inspection would have revealed a code violation that created a potentially dangerous condition, the essence of the plaintiff's argument was that the owner "should have known" and would have known if a reasonable inspection had been made. Morgan, 709 F.2d at 584. Similarly, where an old set of stairs in a public park was rendered dangerous by vandalism, lack of maintenance, accumulated debris, and the effects of weather, there was no liability under the statute to a person who fell down the stairs; the park rangers seldom visited that area of the park, and it was not shown that they had actual knowledge of the dangerous condition. Nauroth v. Spokane County, 121 Wn. App. 389, 393-94, 88 P.3d 996 (2004).

Here, the City did not need to inspect Cornwall Park to know about the condition. The danger created by the invisible barrier did not result from the ravages of time or the activities of third parties. The condition was created by the City itself. See, e.g., Batten v. S. Seattle Water Co., 65 Wn.2d 547, 551, 398 P.2d 719 (1965) (where a municipal corporation creates the dangerous condition, no notice is required).

The majority attributes no significance to the fact that the City created the obstacle in the roadway. "Knowledge in this context would mean that the City knew that the water diverter in proximity to the curb cutout posed a danger to a cyclist choosing to avoid the speed bump to circumvent its speed-reducing effect because riding over the diverter could cause a loss of control resulting in a front wheel becoming trapped in the cutout, producing injury." Majority at 5. This statement of what it means to have actual knowledge is inconsistent with the

cases discussed above. Under the majority's analysis, even if the landowner in Morgan had known there was electricity in the lake, that landowner would have no liability until a previous electrocution had demonstrated that electrified water is dangerous. Even if the park rangers in Nauroth had learned the stairs were slippery by using them, their employer would have no liability until expressly advised that slippery stairs are dangerous. And even if a landowner digs a well and leaves it uncovered, there can no liability unless the landowner has learned from a previous complaint that an uncovered well is dangerous.

Under the majority's analysis, even though the City knew it had placed a fixed and invisible obstacle in the roadway, no liability could arise unless the City had learned from previous complaints that fixed and invisible obstacles in a roadway are dangerous. In short, the majority has taken a sensible immunity statute and transformed it into a rule of no liability until the second accident.

The majority writes that we construe the statute "strictly," citing Matthews v. Elk Pioneer Days, 64 Wn. App. 433, 437, 824 P.2d 541, review denied, 119 Wn.2d 1011 (1992). Majority at 4. It is not clear what significance this statement has, if any, in the majority's analysis. Possibly, the majority believes that strict construction favors landowners. If so, the majority is mistaken. The principle of construction mentioned in Matthews is that a statute is strictly construed where it is "in derogation of the common law" and no intent to change the common law will be found unless the legislature has expressed that intent with clarity. Matthews, 64 Wn. App. at 437. If we actually did construe the recreational use immunity statute strictly because it is in derogation of the common law, we would

regard the statute skeptically and strive to maintain, to the extent possible, the modern common law concepts that treat invitees more favorably than the statute does.

However, I do not believe the principle of strict construction has any application to RCW 4.24.210. The statute was clearly intended to modify the common law. Van Dinter, 121 Wn.2d at 41-42; Davis, 144 Wn.2d at 615-16; Camicia, 317 P.3d at 992. The rule that statutes in derogation of the common law must be strictly construed has been criticized because if viewed as a presumption against changing the common law, it tends to defeat the legislative purpose, which typically is to remedy perceived defects in the common law. Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 102, 829 P.2d 746 (1992), cert. denied, 506 U.S. 1079 (1993). Viewed in this light, the recreational use immunity statute contains no mandate for either liberal or strict construction, in favor of landowners' immunity or against it. It is simply a statute, to be applied to situations encompassed by its terms.

Because this case should be remanded for trial, it is also important to mention that the City is mistaken when it asserts that RCW 4.24.210 is the source of its duty to users of recreational lands. Br. of Respondent at 23, 34. Immunity and duty, though often confused with each other, are distinct concepts. Gilliam v. Dep't of Social & Health Servs., 89 Wn. App. 569, 577-78, 950 P.2d 20, review denied, 135 Wn.2d 1015 (1998). RCW 4.24.210 is a not a source of duty; it is a source of immunity, an affirmative defense that shields the landowner from

liability that might otherwise exist. See RCW 4.24.200 (purpose of statute is to limit liability); Camicia, 317 P.3d at 991.

In a jury trial, the instructions should first permit the jury to decide whether the landowner has proved the facts necessary for immunity. If the jury decides that the landowner has not proved immunity, the instructions should permit the jury to proceed to decide the City's liability under the common law of negligence: duty, breach, causation, and damages. Jewels presents two theories of common law liability. One is that the City as a landowner breached a duty owed to him as an invitee. Egede-Nissen v. Crystal Mountain, Inc., 93 Wn.2d 127, 606 P.2d 1214 (1980). The other is that the City breached its duty to build and maintain its roadways in a condition that is reasonably safe for ordinary travel. Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002).[1]

Because there are genuine issues of material fact concerning the City's immunity under RCW 4.24.210, I would reverse the order of summary judgment and remand for trial.

Becker, J.

---

[1] Jewels submitted two declarations of expert witnesses. One explained that speed bumps (abrupt) as opposed to speed humps (gradual) are considered extrahazardous for bicycles and that the purpose of a gap is "to allow bicyclists to traverse through the speed bump area without encountering it." The trial court denied the City's motion to strike these declarations.