IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SVETLANA NATALICHEVA and GREGORY GRIDIN, and the marital community composed thereof, | ) ) ) | No. 82329-9-I |
| | ) | DIVISION ONE |
| Appellants, | ) ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF REDMOND, a Washington Municipal Corporation, | ) ) | |
| | ) | |
| Respondent. | ) ) | |
| | ) | |

HAZELRIGG, J. — Svetlana Natalicheva appeals from an order granting summary judgment dismissal of her negligence claim against the City of Redmond. She argues the court erred in finding the City was entitled to recreational use immunity under RCW 4.24.200 and .210. Because Natalicheva fails to raise a material issue of fact as to the artificial condition exception to statutory immunity, dismissal was proper.

FACTS

In August 2017, Svetlana Natalicheva sustained life-altering injuries at Idylwood Park in Redmond, Washington after a tree limb fell over 80 feet and struck her. Natalicheva and a friend were in the park sitting in the shade under a tree as their children swam in a nearby lake when Natalicheva was knocked

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

unconscious by the branch and suffered numerous serious injuries such that she effectively lost the use of her left arm. She sued the City of Redmond (City) for negligence, alleging the City knew the cottonwood trees at Idylwood Park posed a risk of "sudden limb drop" (SLD), a condition where otherwise healthy trees lose their branches without warning.[1] The City moved for summary judgment, seeking dismissal of the claim under the recreational use immunity authorized by RCW 4.24.200, .210. The City also moved to strike portions of Natalicheva's expert witness declarations as too attenuated from their fields of expertise. The trial court granted the motion to strike and the motion for summary judgment dismissal. Natalicheva timely appealed.

## ANALYSIS

I.    Summary Judgment Standard and Recreational Use Immunity

This court reviews a decision on summary judgment de novo, conducting the same inquiry as the trial court. Schwartz v. King County, 14 Wn. App. 2d 915, 926, 474 P.3d 1092 (2020). "'We consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.'" Id. (quoting Rublee v. Carrier Corp., 192 Wn.2d 190, 199, 428 P.3d 1207 (2018)). If, based on the record, "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law," summary judgment is proper. Swinehart v. City of Spokane, 145 Wn. App. 836, 844, 187 P.3d 345 (2008).

RCW 4.24.200 and .210 provide statutory immunity for "landowners who open their land to the public for recreational purposes, free of charge." Jewels v.

---

[1] The phenomenon is also referred to as "summer limb drop."

City of Bellingham, 183 Wn.2d 388, 395, 353 P.3d 204 (2015). The statutes aim to "encourage landowners to open their lands to the public for recreational purposes." Davis v. State, 144 Wn.2d 612, 616, 30 P.3d 460 (2001) (citing RCW 4.24.200).

Natalicheva correctly notes in her opening brief that the recreational use immunity is an affirmative defense. See Camicia v. Howard S. Wright Const. Co., 179 Wn.2d 684, 696–97, 317 P.3d 987 (2014). As an affirmative defense, the landowner must demonstrate that the land: "'(1) was open to members of the public (2) for recreational purposes and [that] (3) no fee of any kind was charged.'" Id. at 695–96 (alterations in original) (quoting Cregan v. Fourth Mem'l Church, 175 Wn.2d 279, 284, 285 P.3d 860 (2012)). Once the landowner has made this showing, they are entitled to immunity. Jewels, 183 Wn.2d at 395. However, an injured party "'may overcome this immunity by showing'" an exception applies, including where an individual is injured "'by reason of a known dangerous artificial latent condition for which no warning signs were posted.'" Id. (quoting Davis, 144 Wn.2d at 616). Natalicheva argues because recreational use immunity is an affirmative defense, the landowner bears the burden to show the exception does not apply. This is contrary to our case law. Natalicheva does not contest that the statute applies, therefore under Jewels, she bears the burden to demonstrate the artificial condition exception applies.

Our courts "have consistently held that the four terms: 'known,' 'dangerous,' 'artificial,' and 'latent' modify the term 'condition,' not one another." Swinehart, 145 Wn. App. at 845 (quoting Van Dinter v. City of Kennewick, 121 Wn.2d 38, 46, 846

P.2d 522 (1993)). The injury-causing condition, therefore must be known, dangerous, artificial, and latent. Id. "If one of the four elements is not present, a claim cannot survive summary judgment." Davis, 144 Wn.2d at 616. Natalicheva does not argue the recreational use immunity statute does not apply, but rather focuses on the application of the exception. The City does not argue the condition is not dangerous, concentrating its analysis on the other three elements (known, artificial, and latent).

## II.     Known Dangerous Artificial Latent Condition

Natalicheva first argues the trial court erred by analyzing the injury-causing condition as the falling tree limb "in isolation" from the area underneath the tree ("target zone"), which is maintained by the City. The "target zone" or "target area" was defined by an arborist employed by the City as describing the physical space underneath the canopy of a tree where a tree limb might land if it fell. Natalicheva argued before the trial court that by altering the grass area beneath a cottonwood tree, the City "invited" individuals to sit in this "target zone" where a falling tree branch might land. She contends the injury-causing condition should be viewed as the cottonwood tree susceptible to SLD and the area underneath the tree maintained by the City because the artificially altered grassy area is an external circumstance causally related to her injury.

In analyzing the artificial condition exception to recreational use immunity, the court's first step "is to identify the injury-causing condition." Swinehart, 145 Wn. App. at 845. Because we view all facts and reasonable inferences in the light most favorable to the nonmoving party, the court "must adopt" the nonmoving

party's "view of the injury-causing condition" if it is supported by facts in the record. See Id. at 846. Our state Supreme Court has held "[t]he condition is the specific object or instrumentality that caused the injury, viewed in relation to other external circumstances in which the instrumentality is situated or operates." Ravenscroft v. Wash. Water Power Co., 136 Wn.2d 911, 921, 969 P.2d 75 (1998). For example, in Ravenscroft the injury-causing condition was not simply trees in their natural state, but trees cut down to stumps viewed in relation to "the water channel and the water level." Id. This was because the landowner there had not only cut down the trees, leaving the stumps behind, but also artificially raised the water level such that the stumps were not immediately visible to anyone using the waterway. Id. at 923. In Swinehart, Division III of this court found the injury-causing condition was the exit of a slide "as it rest[ed] on a bed of wood chips." 145 Wn. App. at 846. In Van Dinter, the injury-causing condition was a caterpillar-shaped piece of playground equipment and its placement, "rather than the caterpillar as viewed in isolation." 121 Wn.2d at 44.

Here, Natalicheva argues the injury-causing condition is not the cottonwood tree "viewed in isolation," but "the target zone where falling limbs can injure park patrons" in relation to the grassy area maintained by the City. In her response in opposition to the City's motion for summary judgment, Natalicheva argued the City's maintenance of the grassy area underneath the tree acted as a "lure" which "invites the unsuspecting public" into danger. Our state Supreme Court analyzed a similar argument in Davis, where tire tracks leading up to a natural drop-off were not "so closely related as to create a single artificial condition," distinguishing the

case from the court's earlier decision in Ravenscroft, 144 Wn.2d at 617, 618. The Davis court stated "the artificial condition in Ravenscroft was unique," because the artificial external circumstance "completely altered the natural condition of that object," such that "[t]he two conditions could not reasonably be analyzed as independent circumstances." Id. at 618. This close relationship between the injury-causing condition "and an artificial external circumstance [like the one found in Ravenscroft] is rare." Id. In contrast, the tracks leading to the drop-off in Davis had a more attenuated relationship because "the drop-off itself remained in its natural state." Id. at 619. Had the plaintiff "walked up to the drop-off following a set of artificial tire tracks, he still would have encountered the drop-off in its natural condition." Id.

Natalicheva attempts to distinguish Davis by arguing the "recreational area and the target zone cannot be encountered independently." While we must adopt the nonmoving party's definition of the condition, we are not bound to a definition unsupported by facts in the record or a reasonable inference. Even viewing the evidence in the light most favorable to Natalicheva, it is not reasonable to define the condition as the maintained grassy area in the "target zone" and the tree. The "specific object or instrumentality that caused the injury" was the cottonwood limb that succumbed to SLD and fell, striking Natalicheva. See Ravenscroft, 136 Wn.2d at 921. Had the City not maintained the area underneath the tree, Natalicheva still could have walked underneath the tree susceptible to SLD in its natural state. The artificial "lure" of a grassy area, like the tire tracks in Davis, was not so closely related to the natural condition as to become one artificial condition. The

relationship is so attenuated that this question may be determined as a matter of law, and summary judgment in favor of the City was proper.

Further, if this court held as Natalicheva urges, our decision would run contrary to the express public policy underlying the recreational use immunity statute. Christopher Tolonen, on behalf of the City, testified that SLD is observed in several species of trees common to western Washington: "maple, alder, sycamore and cottonwoods, among others." Natalicheva submitted no evidence to contest this testimony. Further, Natalicheva's own experts agreed a tree suffering from SLD "would generally appear to be healthy." To hold the City, or other landowners, liable for injuries from trees that appear healthy would contravene recreational use immunity, which seeks to "encourage landowners to open their lands to the public for recreational purposes" by providing immunity from liability. See Davis, 144 Wn.2d at 616. Given the proliferation in Washington of the sorts of trees susceptible to SLD, the limitation on recreational use immunity proposed by Natalicheva would have a chilling effect on the availability of outdoor recreation on lands opened to the public for such use. We recognize the seriousness of Natalicheva's injuries and the harm she has suffered, but we must also recognize, and defer to, the public policy identified and implemented by our state legislature.

Because Natalicheva has failed to raise a material issue of fact as to the element of artificiality such that an exception to recreational use immunity applies, judgment as a matter of law in favor of the City is proper.[2]

---

[2] Because Natalicheva must raise a material issue of fact as to all four elements in order to avoid summary judgment dismissal based on recreational use immunity, we need not reach the

III.    Order Striking Expert Declarations

Natalicheva also argues the trial court erred in granting the City's motion to strike portions of her expert declarations.  The court struck several paragraphs in declarations from Zeb Haney and Favero Greenforest, finding they contained improper evidence.  At the motion hearing, the court stated the opinions were beyond the expertise of the declarants to the extent the opinions discussed "risk management" or "how to manage parks."

When the ruling is on materials that are submitted in connection with summary judgment, this court conducts a de novo review.  Keck v. Collins, 181 Wn. App. 67, 82, 325 P.3d 306 (2014).  We may affirm the trial court's decision "on any basis supported by the record."  Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

Under ER 702, if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert witness "may testify."  This requires a determination that "the testimony will assist the trier of fact and that the witness qualifies as an expert."  Behr v. Anderson, 18 Wn. App. 2d 341, 374, 491 P.3d 189 (2021).  Finally, a court may exclude expert testimony if the expert testifies about "'information outside [their] area of expertise.'"  Watness v. City of Seattle, 11 Wn. App. 2d 722, 749, 457 P.3d 1177 (2019) (quoting In re Marriage of Katare, 175 Wn.2d 23, 38, 283 P.3d 546 (2012)).

---

other two contested elements (knowledge and latency). As we find dismissal in favor of the City was proper, the court's denial of Natalicheva's motion to reconsider the summary judgment order was not error.

A.     Common Knowledge

If the expert opinion is a matter of common knowledge, and the court "needs no expert testimony as an aid to understanding, the court may exclude it." Ball v. Smith, 87 Wn.2d 717, 725, 55 P.2d 936 (1976).  Paragraph 22 of the Haney declaration opines that the target zone "invited beach patrons (targets) to sit or recline in the shaded area."  This opinion is no more than common knowledge and is therefore unhelpful to the court as expert testimony.  Paragraph 26 of the Haney declaration concludes the City's maintenance of the target area "was an act of converting a natural state of the land."   This is also common knowledge and unhelpful to the court as expert testimony.  It is improper under ER 702.

Paragraph 22 of the Greenforest declaration also suggests the maintained area "would invite beach patrons" to sit or recline.  This is also common knowledge unhelpful to the court.  Paragraph 25 of the Greenforest declaration states the area where Natalicheva was injured looked like exhibits D and E, which are photos of the actual area.  This again is common knowledge and unhelpful to the court, which could simply look at the photos of the actual area, which the City agreed it maintained.

The court properly struck paragraphs 22 and 26 of the Haney declaration and paragraphs 22 and 25 of the Greenforest declaration as they contained nothing more than common knowledge unhelpful to the court.

B.     Legal Conclusions

An expert may give testimony "embracing the ultimate issue," but testimony "must be disregarded to the extent that it contains purely legal conclusions." Tortes

v. King County, 119 Wn. App. 1, 13, 84 P.3d 252 (2003). Paragraph 23 of the Haney declaration states the City's maintenance of the grassy area "[was a] factor[] that contributed to [the] Plaintiff's injuries," and had the City not maintained the area "[the] Plaintiff's injuries would not have occurred." This is an improper legal conclusion that attempts to reach the elements of Natalicheva's negligence claim. Paragraph 23 of the Greenforest declaration opines maintaining the area "was an intentional act by the City to convert a natural state of the land to an artificial one." This too is an improper legal conclusion.

The court properly struck Paragraph 23 of the Haney declaration and Paragraph 23 of the Greenforest declaration under ER 702.

C.    Outside Scope of Expert Knowledge

Finally, a court may also exclude expert testimony if the expert testifies about "information outside [their] area of expertise." Watness, 11 Wn. App. 2d at 749 (quoting Katare, 175 Wn.2d at 38).

Haney declared he is a "Board Certified Master Arborist," a registered consulting arborist, and is qualified in tree risk assessment. He does not state any experience directly related to park management, but does have experience in tree risk management and "tree risk assessment," which he testifies includes knowledge about mitigation plans to prevent injuries. Based on this expertise, paragraphs 21, 24, and 25 are not beyond Haney's scope of expertise as it relates to vegetation growth, risk mitigation, and tree risk assessment. These paragraphs were improperly excluded.

Greenforest is also a certified arborist and is qualified to conduct tree risk assessment. Like Haney's, Paragraph 21 of Greenforest's declaration opines about potential risk mitigation strategies the City could have used. This was proper given his risk assessment experience. Paragraph 24 describes what the natural state of the area might look like without maintenance, which is also within Greenforest's area of expertise. Paragraphs 21 and 24 of the Greenforest declaration should have been considered by the court.

While the court erred in excluding several paragraphs of Natalicheva's expert declarations, this does not end our analysis of the issue. "When a trial court makes an erroneous evidentiary ruling, the question on appeal becomes whether the error was prejudicial." Driggs v. Howlett, 193 Wn. App. 875, 903, 371 P.3d 61 (2016). Only if an error "affects the outcome of the case," will it constitute grounds for reversal. Id. Even considering the portions of Natalicheva's expert declarations the trial court ordered stricken, she fails to raise a material issue of fact as to artificiality and her claim fails as a matter of law. As a result, the trial court's error is harmless and does not justify reversal.[3]

While Natalicheva's injuries are unquestionably horrific, to hold as she suggests would directly contradict the express intention of the legislature when it created recreational use immunity to encourage landowners to open their properties for public use. The trial court appropriately applied the standard set out

---

[3] Although we conclude under a de novo review that the court erred in striking portions of the expert declarations, we review an order denying a motion for reconsideration for an abuse of discretion. Phillips v. Greco, 7 Wn. App. 2d 1, 9, 433 P.3d 509 (2018). Because the court's decision was not based on untenable grounds or reasons, and as the error is harmless, the court did not err in denying Natalicheva's motion for reconsideration of the order striking portions of the expert declarations.

in <u>Davis</u> and properly dismissed the suit against the City based on statutory immunity.

Affirmed.

WE CONCUR: