

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE __JUN 1 1 2015__

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 11, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STEVEN JEWELS, | ) | No. 90319-1 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| CITY OF BELLINGHAM, | ) | |
| Respondent. | ) | Filed __JUN 1 1 2015__ |

JOHNSON, J.—This case involves statutory interpretation of Washington's recreational land use statute, RCW 4.24.210. The plaintiff in this case sued the city of Bellingham for negligence following an injury he sustained when he was thrown from his bicycle after hitting an obstacle in a city-maintained park. Under the statute, landowners who open their property for recreational use free of charge are immune from liability when visitors injure themselves. This statutory immunity does not apply, however, "for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted." RCW 4.24.210(4)(a). The trial court dismissed the plaintiff's claims on summary judgment, and the Court of Appeals affirmed. As we held in *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 846 P.2d 522 (1993), and

we hold again today, the adjectives "known," "dangerous," "artificial," and "latent" each modify the term "condition," not one another. We hold that the Court of Appeals erroneously interpreted the statute by concluding that the plaintiff must show the city of Bellingham *knew* the condition was *dangerous*. However, our review of the record supports the trial court's conclusion that the condition in this case was obvious—that is, not latent. We affirm summary judgment in favor of the city of Bellingham.

FACTS

Steven Jewels was injured in a bicycle accident while riding in Cornwall Park, which the city of Bellingham (City) maintains. Jewels rode over a speed bump that caused a jolt to his bicycle. As he approached a second speed bump, he attempted to ride around it in order to avoid another jolt. Both speed bumps were painted bright yellow and did not span the entire width of the pathway: there was an unpainted section between the speed bump and the adjacent curb. In his declaration, Jewels asserted that the area between the second speed bump and the curb appeared to him to be "bare, flat pavement." Clerk's Papers (CP) at 92. Unfortunately, this area was not bare, flat pavement. Instead, the City had installed an unpainted asphalt berm between the second speed bump and the adjacent right-hand curb. This "water diverter" berm channels water off of the pathway and into a cutout in the right-hand curb. The water diverter is approximately two inches high.

In its shape and position, the water diverter is essentially a smaller, lower speed bump that extends from the speed bump proper to the curb cutout.

Jewels rode his bicycle into this area. The unexpected shock from hitting the water diverter forced his front tire into the curb cutout, throwing him from his bicycle and causing him injury. The day after Jewels's accident, the City's parks and recreation department issued a work order directing the water diverter to be painted the same yellow color as the speed bump.

### PROCEDURAL HISTORY

Jewels sued the City for negligence. The City, in turn, asserted the immunity provided to it under Washington's recreational land use statute and moved for summary judgment. Jewels countered, arguing that his claim fell within the statutory exception for injuries caused by "a known dangerous artificial latent condition." RCW 4.24.210(4)(a). He argued that the City knew about the water diverter (having installed it) and that the water diverter was dangerous, man made, and difficult to see. Jewels introduced declarations from himself and other bicycling experts in support of his argument that areas next to speed bumps are usually flat. The City introduced several photographs of the area where the accident occurred. These photographs were taken after the accident and after the water diverter was painted bright yellow to match the speed bump.

The trial court granted summary judgment in favor of the City. It ruled that Jewels had failed to establish a material issue of fact that the water diverter was latent:

> I agree that when it wasn't painted, it wasn't as obvious as the yellow speed bump. Nonetheless, it is two or two and a half inches high apparently. It was within view. Mr. Jewels was — it's not something that he couldn't have seen had he looked, and that is really the standard under this statute. If you can see it, you know it, you should be aware of it.
>
> And so I think that despite Mr. Jewels' unfortunate circumstances, and I think his assumption that he could ride to the side of the, of the speed bump might very well be a good assumption, and I'm not striking the expert opinion, so you know, if they indicate, one of them indicate that is what bicyclists commonly do, and I don't see that as being a problem, but I do think that this bump even if not painted was large enough and wide enough that it was clearly obvious and clearly visible. So it is not a latent condition.

Verbatim Report of Proceedings (July 27, 2012) (VRP) at 18-19.

Secondarily, the trial court concluded that the water diverter was not a "known dangerous condition to the City, because there is no evidence whatsoever that the City knew or should have known or would have known that it was dangerous." VRP at 19. The trial court denied Jewels's motion for reconsideration, confirming its conclusion that the condition was not latent and that the City did not know the condition was dangerous.

The Court of Appeals affirmed dismissal in a split decision. *Jewels v. City of Bellingham*, 180 Wn. App. 605, 324 P.3d 700 (2014). The majority of the Court of Appeals reasoned that in order to establish a "known condition" under the recreational use statute, a plaintiff must show that the defendant "also knew that [the condition] was dangerous and latent." *Jewels*, 180 Wn. App. at 611. Concluding that Jewels had failed to show that the City knew the condition was dangerous, the Court of Appeals did not reach the issue of whether the condition was latent. In dissent, Judge Becker argued that the plaintiff must show only that the City knew the injury-causing condition exists in order to overcome the statutory immunity, not that the City knew the condition was dangerous. *Jewels*, 180 Wn. App. at 617 (Becker, J., dissenting). We granted review. *Jewels v. City of Bellingham*, 181 Wn.2d 1001, 332 P.3d 985 (2014).

STANDARD OF REVIEW

Statutory interpretation is a question of law, which we review de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Our starting point is always the statute's plain language and ordinary meaning. If the language is unambiguous, our review is at an end. But if the language is open to more than one reasonable interpretation, we may apply our recognized canons of statutory construction to arrive at the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

ANALYSIS

Washington's recreational land use statute aims to encourage landowners to open their lands to the public by modifying the common law duty owed to invitees, licensees, and trespassers. *Davis v. State*, 144 Wn.2d 612, 615-16, 30 P.3d 460 (2001). In relevant part, the statute reads:

> (1) Except as otherwise provided in subsection (3) or (4) of this section, any public or private landowners . . . who allow members of the public to use them for the purposes of outdoor recreation . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.
>
> . . . .
>
> (4)(a) Nothing in this section shall prevent the liability of a landowner or others in lawful possession and control for injuries sustained to users by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted.

RCW 4.24.210.[1]

In short, landowners who open their land to the public for recreational purposes, free of charge, are generally not liable for unintentional injuries to such users. However, the statute creates an exception where an injured party may overcome this immunity by showing either "(1) a fee for the use of the land [was] charged; (2) the injuries were intentionally inflicted; or (3) the injuries were sustained by reason of a known dangerous artificial latent condition for which no

---

[1] RCW 4.24.210 has been modified since the time of Jewels's accident, but the provisions relevant to this case are unchanged. *See* LAWS OF 2012, ch. 15, § 1.

warning signs were posted." *Davis*, 144 Wn.2d at 616 (citing RCW 4.24.210(1), (3)). Only this last exception is at issue in this case. All four elements (known, dangerous, artificial, latent) must be present in the injury-causing condition for liability to attach to the landowner. *Davis*, 144 Wn.2d at 616.

The lack of punctuation in the statute between the terms "known dangerous artificial latent condition" has caused conflicting interpretations in the Court of Appeals. RCW 4.24.210(4)(a). For example, in *Gaeta*, the Court of Appeals wrote that "[i]n order to constitute a 'known' dangerous condition for purposes of the recreational use act, the landowner must have actual as opposed to constructive knowledge that a condition is dangerous." *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 609, 774 P.2d 1255 (1989) (citing *Morgan v. United States*, 709 F.2d 580, 583-84 (9th Cir. 1983)). This analysis would interpret the term "known" as modifying "dangerous," not "condition." Other Court of Appeals decisions cited this analysis in their opinions as well.[2]

But in our own analysis interpreting the statutory immunity, we came to a different conclusion. In *Van Dinter*, the plaintiff was playing at a park where there

---

[2] *See Cultee v. City of Tacoma*, 95 Wn. App. 505, 517, 977 P.2d 15 (1999); *Ertl v. Parks & Recreation Comm'n*, 76 Wn. App. 110, 115, 882 P.2d 1185 (1994); *Tabak v. State*, 73 Wn. App. 691, 696, 870 P.2d 1014 (1994). *Gaeta* and these subsequent cases also all cite *Morgan* for the rule that a condition is not "known" unless the landowner actually knows that it is dangerous and latent. But this is not the rule from *Morgan*. Rather, the Ninth Circuit held only that a landowner must have actual knowledge that the condition exists and need not inspect his property to discover hidden dangers. *Morgan*, 709 F.2d at 583-84.

was a caterpillar-shaped piece of playground equipment. As the plaintiff was running, he ran into one of the antennae that protruded from the caterpillar, injuring his eye. We rejected the plaintiff's argument that the term "latent" modifies "dangerous," such that an obvious condition could mask a latent danger. *Van Dinter*, 121 Wn.2d at 46. Rather, we held that all four terms (known, dangerous, artificial, latent) modify "condition," not one another. *Van Dinter*, 121 Wn.2d at 46. Our holding in *Van Dinter* necessarily rejected the analysis from *Gaeta*, *Cultee*, *Ertl*, and *Tabak* that implied any of the four terms modified one another.[3] *Cultee v. City of Tacoma*, 95 Wn. App. 505, 977 P.2d 15 (1999); *Ertl v. Parks & Recreation Comm'n*, 76 Wn. App. 110, 882 P.2d 1185 (1994); *Tabak v. State*, 73 Wn. App. 691, 870 P.2d 1014 (1994).

*Van Dinter*'s reasoning applies equally in this case. Here, the Court of Appeals concluded that Jewels had failed to show that the City knew that the injury-causing condition was dangerous. In other words, it concluded that "known" modifies "dangerous" within the meaning of the recreational use statute. We

---

[3] *Cultee, Ertl*, and *Tabak*—all decided after *Van Dinter*—cite both the language from *Gaeta* that implies "known" modifies "dangerous" and the contradictory rule we announced in *Van Dinter*—that all four terms modify only "condition." And *Gaeta* itself rejected the argument that "latent" modified "dangerous," reasoning that "the statute properly interpreted would apply the term 'latent' [only] to the condition." *Gaeta*, 54 Wn. App. at 610. We disapprove of the analysis in these cases to the extent that they conflict with our holding today and *Van Dinter*—that all four terms (known, dangerous, artificial, latent) modify only "condition" and not one another.

necessarily foreclosed this argument in *Van Dinter* when we held that "latent" does not modify "dangerous," but rather all four terms modify "condition." There, we reasoned that if the legislature had intended "latent" to modify "dangerous," it would have referred to "known artificial conditions having latent dangerous aspects." *Van Dinter*, 121 Wn.2d at 46. Similarly here, if the legislature had intended "known" to modify "dangerous," as the Court of Appeals reasoned, it would have referred to latent artificial conditions having known dangerous aspects.

But that is not the language of the statute. Rather, the plain language of the statutory immunity contains four adjectives (known, dangerous, artificial, latent) and only one noun that those adjectives could modify (condition). Because there is no punctuation or any other indication to the contrary, the only grammatically logical interpretation is that each of the four adjectives modify the noun independent of one another.[4] Tellingly, the legislature has amended the recreational land use statute since our decision in *Van Dinter* but has left the phrasing and punctuation of the statutory immunity undisturbed, thus indicating legislative approval of our interpretation of the statute.

We reaffirm that all four terms modify "condition" and disapprove of the Court of Appeals' decisions to the extent that they reason to the contrary. Jewels

---

[4] As we noted in *Van Dinter*, interpreting all four terms to modify "condition" is also consistent with the legislative history. *See Van Dinter*, 121 Wn.2d at 45 n.2.

offered sufficient proof that the City knew the injury-causing condition existed.[5]

The statute does not require him to show that the City knew that the condition was

dangerous: such a requirement would be contrary to the plain language of the

statute and our holding in *Van Dinter*.

## "LATENT"

Although we reverse the Court of Appeals' reasoning in this case, we affirm

the trial court's grant of summary judgment in favor of the City because no issue of

material fact exists to show the condition was latent. Jewels argues to this court

that the injury-causing condition, which he defines as the "berm," also called the

water diverter, was not obvious as a matter of law and therefore there is a material

issue of fact precluding summary judgment. In his declaration, Jewels stated that

the ground appeared to him to be "bare, flat pavement between the curb and speed

bump." CP at 92. He also submitted declarations from experts opining how speed

bumps are usually marked by warnings such as yellow paint, how speed bumps do

not usually span the entire roadway, and how water diverters and other

obstructions present hazards to bicycle traffic.

An injury-causing condition is "latent" if it is "not readily apparent to the

recreational user." *Van Dinter*, 121 Wn.2d at 45. The condition itself, not the

---

[5] Both parties agree that "known" under the recreational land use statute means *actual* knowledge, not constructive knowledge.

danger it poses, must be latent. The dispositive question is whether the condition is readily apparent to the general class of recreational users, not whether one user might fail to discover it. *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 555-56, 872 P.2d 524 (1994). In other words, what one "particular user sees or does not see is immaterial." *Widman v. Johnson*, 81 Wn. App. 110, 114-15, 912 P.2d 1095 (1996). This is an objective inquiry. A brief review of our cases illustrates this definition and why there is no material issue of fact regarding latency in this case.

For example, in *Gaeta* a motorcyclist injured himself driving over railroad tracks owned by the city. Running beside these railroad tracks was a groove approximately two and a half inches in width, which allowed the wheels of a "'mule'" to run alongside. *Gaeta*, 54 Wn. App. at 605. The plaintiff drove on to the tracks, and when he found these to be slippery, he attempted to cross them. As he was doing so, his wheel jammed into the mule groove next to the railroad track, throwing him from his bike and causing injury. Affirming the dismissal of the plaintiff's case, the Court of Appeals held that the injury-causing condition (the mule groove next to the railroad track) was not latent because it was obvious. *Gaeta*, 54 Wn. App. at 610.

In *Van Dinter*, we held that the injury-causing condition in that case was not latent. First, we defined the injury-causing condition as the proximity of the

caterpillar-shaped playground equipment in relation to the grassy area of the park. The plaintiff argued that he neither saw the caterpillar, nor did he appreciate the danger that the caterpillar's proximity to grassy area may have posed to him. The city, he argued, should have increased the border area surrounding the caterpillar to further separate the caterpillar from the rest of the park. We held that the condition was not latent, expressly approving of *Gaeta*'s analysis, writing that it "illustrates the proper interpretation of 'latent' in RCW 4.24.210."[6] *Van Dinter*, 121 Wn.2d at 46. We also rejected the plaintiff's argument there was a factual question for the jury and affirmed summary judgment in favor of the city.

In *Tennyson*, the plaintiff injured himself while riding his motorcycle off road on land opened for recreational use. The plaintiff fell down a sharp drop-off on the back side of a gravel mound. He had ridden his motorcycle over the same gravel mound 14 months earlier, when the drop off did not exist. Since that time, the landowner had excavated over one-half of the far side of the mound. On the day of the accident, the plaintiff rode up the mound, reached the summit, and unexpectedly tumbled down the excavated side. The Court of Appeals, applying our holding in *Van Dinter*, held that the injury-causing condition (the dirt mound, including the excavated drop-off on the far side) was not latent. Although it

---

[6] As noted above, however, we did reject *Gaeta*'s statutory analysis to the extent that it interpreted "known" as modifying "dangerous."

recognized that the plaintiff did not, and could not from his vantage point, see the precipitous drop off, the court concluded that the "excavation was in plain view and readily apparent to anyone *who examined* the gravel mound as a whole." *Tennyson*, 73 Wn. App. at 555-56 (emphasis added).

Finally, in *Swinehart v. City of Spokane*, 145 Wn. App. 836, 187 P.3d 345 (2008), the plaintiff was injured when he went down a large playground slide. At the bottom was a containment area filled with wood chip material meant to cushion the landing of those exiting the slide. Some of this material had become displaced from repeated landings. The plaintiff went down the slide and landed on the exposed, hard ground, injuring his spine. The Court of Appeals accepted the plaintiff's definition of the injury-causing condition as insufficiently and improperly maintained fill material at the bottom of the slide. But it concluded that the condition was not latent: park users were able to determine whether the wood chips had been displaced by simply looking at the appearance and feel of the material. And most significantly, the plaintiff introduced a photograph taken at the slide's exit meant to reveal the poor condition of the wood chips. As the Court of Appeals aptly noted, this "seemingly acknowledge[s] that the condition of the wood chips was visible and obvious at the time of the accident or such a condition could not have been captured by a photograph. An obvious defect cannot be latent." *Swinehart*, 145 Wn. App. at 852 (citing *Tabak*, 73 Wn. App. at 698).

From these cases, we derive the following principles on latency: if an ordinary recreational user standing near the injury-causing condition could see it by observation, without the need to uncover or manipulate the surrounding area, the condition is obvious (not latent) as a matter of law. The latency of the condition is not based on the particular activity the recreational user is engaged in or the particular user's experience with the area from earlier visits or expertise in the specific recreational activity.

Applying these principles, we affirm the trial court's conclusion that no material issue of fact exists regarding latency in this case. Jewels asserted that the ground appeared to him to be bare and flat. But latency is viewed objectively, and what a particular recreational user saw, believed, or thought he saw is immaterial. From our review of the photographs in the record, we conclude that any person could stand near the water diverter and see it. This water diverter, which is in essence a smaller speed bump, approximately two inches in height, is about an inch lower than the speed bump proper. Even if we were to define the condition as the speed bump in proximity to the cutout and the water diverter, each component of the condition is obvious. If each component of the condition is obvious, so is the condition itself. We note that the City was able to walk up to the area and photograph it without any need to unclose or uncover the condition. Like *Swinehart*, the fact that the condition can be easily photographed is an

acknowledgment that the condition is obvious. Although we agree with the trial court that by later painting the water diverter the City made the condition *more obvious*, that does not mean that the condition was latent before. Because no issue of material fact exists on the latency element, we affirm the trial court's grant of summary judgment in favor of the City.

CONCLUSION

For liability to attach to a landowner under Washington's recreational land use statute, the defendant must have actual knowledge that the condition *exists*; the defendant does not need to know that the condition is dangerous. The condition must also objectively be dangerous, artificial, and latent. All four elements in RCW 4.24.210(4)(a) modify the term "condition," not one another. In this case, there is no dispute that the City had knowledge of the injury-causing condition and that the condition was artificial. However, because there is no issue of material fact as to whether the condition was latent, we affirm summary judgment in favor of the City

and reverse the opinion of the Court of Appeals.

WE CONCUR:

Madsen, C.J.

Carer, J.

Fairhurst, J.

Lu, J.

No. 90319-1

GORDON McCLOUD (dissenting)—I agree with much of the majority opinion. I agree that the adjectives in the recreational land use statute ("known," "dangerous," "artificial," and "latent"), RCW 4.24.210, modify the term "condition" and not one another. Majority at 2. And I agree with much of what the majority says about the issue of latency.

I disagree with the majority's ultimate holding, however, because it depends on a definition of the "general class of recreational users" that is too restrictive. Majority at 11. I therefore conclude that Steven Jewels has created a genuine issue of material fact as to latency. I also conclude that he has created a genuine issue of material fact as to dangerousness. Accordingly, I would reverse the Court of Appeals.

## ANALYSIS

An injury-causing condition is "latent" for purposes of the recreational use statute if it is "not readily apparent to the recreational user." *Van Dinter v. City of*

1

*Kennewick*, 121 Wn.2d 38, 45, 846 P.2d 522 (1993). The majority is correct that this is an objective inquiry; a condition is not latent merely because the plaintiff didn't see it or failed to appreciate its dangerousness. *Id.* at 45-46; majority at 11. Instead, as the majority correctly notes, "The dispositive question is whether the condition is readily apparent to the *general class of recreational users*." Majority at 11 (emphasis added); *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 924, 969 P.2d 75 (1998).

The majority, however, uses an overly restrictive definition of the "general class of recreational users." Majority at 11. The majority limits this class to "ordinary recreational user[s] *standing near the injury-causing condition.*" *Id.* at 14 (emphasis added). It thereby excludes bicyclists like Jewels from the class of recreational users whose perspective matters to the latency inquiry.

In my view, this conflicts with our precedent on the recreational land use statute. In *Ravenscroft*, the plaintiff was injured while riding in a boat on Long Lake. 136 Wn.2d at 916. The boat struck some submerged tree stumps, and the impact caused the motor to flip up into the boat and strike the plaintiff. *Id.* at 915. This court held that a jury could find the submerged stumps were latent because the evidence showed that (1) the pilot of the plaintiff's boat failed to see the stumps and (2) other boaters had also hit the stumps. *Id.* at 925.

2

Of significance to this case, the *Ravenscroft* court did not ask whether the stumps would have been readily apparent to someone swimming near them. Instead, our decision relies on the assumption that the plaintiff—a boater—fell within the general class of Long Lake's recreational users.[1]

Similarly, there can be no question here that Jewels falls within the general class of recreational users who visit Cornwall Park. He was injured while riding a bicycle through the park on the right side of the public road, just as traffic laws dictate he must. *See* RCW 46.61.770(1) ("Every person operating a bicycle upon a roadway at a rate of speed less than the normal flow of traffic at the particular time and place shall ride as near to the right side of the right through lane as is safe."). No evidence suggests that he was riding at an unusual speed or in an otherwise unusual manner.

Because I believe that Jewels falls within the general class of recreational users, I also disagree with the majority's assertion that Jewels' perception is "immaterial" to the latency determination. Majority at 14. Contrary to the majority's implication, Jewels does not argue that the water diverter was latent solely

---

[1] To the extent that this conflicts with the reasoning in *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 872 P.2d 524 (1994), on which the majority relies, I would adhere to this court's precedent.

from his unique perspective. *See id.* ("what a particular recreational user saw, believed, or thought he saw is immaterial"). Instead, he argues that the water diverter was latent from the perspective of bicyclists in general.[2]

To be sure, Jewels does provide his own declaration that although he looked at the ground where he intended to ride around the second speed bump, that ground appeared to be "bare, flat pavement between the curb and speed bump." Clerk's Papers (CP) at 92. But that statement is more than an assertion about what Jewels, in particular, saw. It is also evidence that the unpainted water diverter was not readily apparent to bicyclists in general.

More importantly, Jewels' statement is supported by the photographs that the city of Bellingham (City) submitted. Despite the City's characterization of the water diverter as "black" and therefore readily distinguishable from the gray concrete surrounding it, CP at 16-17, the photographs depict the unpainted asphalt as only slightly darker than the surrounding concrete. Based on this objective evidence, a

---

[2] This distinguishes Jewels' case from both *Van Dinter*, 121 Wn.2d at 45, and *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 610-11, 774 P.2d 1255 (1989), on which the majority relies for its holding on latency. *See* majority at 11-12. In both *Van Dinter* and *Gaeta*, the plaintiffs argued that a *patent* injury-causing condition posed a *latent* danger. *Van Dinter*, 121 Wn.2d at 45; *Gaeta*, 54 Wn. App. at 610. Both courts held that the recreational land use statute bars relief in that circumstance because the term "latent" in the statute modifies "condition" and not "danger." *Van Dinter*, 121 Wn.2d at 45; *Gaeta*, 54 Wn. App. at 610.

jury could reasonably find that the asphalt water diverter (and thus its proximity to the curb cutout) was not "readily apparent" to the average recreational bicyclist. *Van Dinter*, 121 Wn.2d at 45.[3]

For those reasons, I would hold that the City is not entitled to summary judgment on the question of latency.

I would also hold that the City is not entitled to summary judgment on the question of dangerousness. This court has not interpreted the term "dangerous" in the recreational use statute, but the Court of Appeals has held that a "dangerous" condition is one "that poses an unreasonable risk of harm." *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 609, 774 P.2d 1255 (1989) (citing WILLIAM L. PROSSER, HANDBOOK ON THE LAW OF TORTS § 31 (4th ed. 1971)); *Cultee v. City of Tacoma*, 95 Wn. App. 505, 518, 977 P.2d 15 (1999).

---

[3] This distinguishes Jewels' case from *Swinehart v. City of Spokane*, 145 Wn. App. 836, 187 P.3d 345 (2008), on which the majority relies. *See* majority at 13-14. In *Swinehart*, the plaintiffs submitted photographs showing the alleged injury-causing condition: the displacement of cushioning wood chips beneath a city park slide. 145 Wn. App. at 852. They then argued that "'[t]he photographs . . . *reveal[ed] a poorly maintained surface* at the slide exit[,] and no reasonable juror could refute this evidence.'" *Id.* (emphasis added) (first alteration in original). In other words, the plaintiffs argued that the injury-causing condition was readily apparent from the photographs. The Court of Appeals held that the plaintiffs thereby "seemingly acknowledge that the condition of the wood chips was visible and obvious at the time of the accident." *Id.* In this case, Jewels does not argue that the photographs prove the *existence* of the injury-causing condition; rather, he argues that they reveal the condition's *latency*.

In support of his argument that the water diverter between the speed bump and the cutout was dangerous, Jewels offered a declaration of Jim Couch (a professional bicyclist) and a report by Edward Stevens (an engineer). The Couch declaration stated that Couch has "ridden all over the state of Washington through [his] many years as a competitive and recreational cyclist, and as a group ride leader," and that in his opinion "[s]peed bumps are usually marked by warnings on the roadway such as yellow paint . . . to give people notice [and] most . . . do not take up the entire roadway." CP at 108. Citing a study from San Jose, California, Stevens reported that obstructions like the water diverter—"abrupt . . . [b]umps," as opposed to "gradual . . . humps"—have been shown to be "particularly extra hazardous for bicycle traffic." CP at 80-81. Stevens also opined that "[t]he City of Bellingham installed an extra hazardous drainage feature across the Cornwall Park Road[, which] was known to cause loss of control for bicycles, light motorcycles, and was also recognized by the industry to cause operational problems for emergency vehicles." CP at 81.

The City argues that Stevens' report is inadmissible because it is unsworn. The City is correct that the report was not attached to a declaration, by Stevens, attesting to the truth of its contents. And it is true that unauthenticated evidence is inadmissible in opposition of summary judgment. *SentinelC3, Inc. v. Hunt*, 181

Wn.2d 127, 141, 331 P.3d 40 (2014). But the City did not object to the admission of Stevens' report on that basis in the trial court. Instead, it objected that the report was irrelevant because it was "based on the alleged standards for speed bumps in a city street [, while] . . . the alleged accident occurred on a park access road which is not a platted, designed City of Bellingham street." CP at 117. Because the City did not object that the report was unsworn, Jewels was afforded no opportunity to correct the error. I would therefore decline to address this unpreserved error now. *See* Rules of Appellate Procedure (RAP) 2.5.

The City also argues that Couch's declaration is inadmissible under Rules of Evidence (ER) 702 because "it offers testimony on areas outside [Couch's] expertise (park construction) and speculates on why Plaintiff made certain decisions." City of Bellingham's Suppl. Br. at 20.

This, however, is not an accurate characterization. In his declaration, Couch states that "[s]peed bumps are usually marked by warnings on the roadway such as yellow paint and/or through signage to give people notice." CP at 108. The basis for that observation is Couch's 30 years "in bicycle riding and coaching," CP at 107—experience sufficient to qualify him as an expert in the kinds of speed bumps that bicyclists typically encounter. *See* ER 702 (witness may be "qualified as an expert by . . . experience"). Couch also opined that "it was reasonable for Mr. Jewels

7

to believe that [the site of the accident] was a typical speed bump, particularly when the first speed bump he came to in the park fit that common pattern." CP at 109. This was not, as the City asserts, "speculat[ion]" about Jewels' decision to ride over the water diverter. City of Bellingham's Suppl. Br. at 20. Rather, it was an opinion about what bicyclists generally do and expect. As such, it was admissible under ER 702. *See State v. Francisco*, 148 Wn. App. 168, 177, 199 P.3d 478 (2009) (detective allowed to testify, as expert, that "drug users generally do not give away drugs").

The trial court correctly admitted both Stevens' and Couch's expert testimony. That testimony is sufficient to create a genuine issue of material fact as to whether the water diverter in proximity to the curb cutout posed an unreasonable risk of harm. Thus, I would hold that the City is not entitled to summary judgment on the issue of dangerousness.

## CONCLUSION

The majority is correct that a plaintiff contesting recreational land use immunity need not show that the defendant knew the injury-causing condition was dangerous and latent. But the majority errs by limiting the class of general recreational users to those standing near the injury-causing condition.

Applying a broader definition of this general class, I conclude that Jewels has created genuine issues of fact as to latency and dangerousness. I would therefore reverse the Court of Appeals and remand to the trial court.

Gordon McCloud, J.

González, J.

Wiggins, J.

Stephens, J.