IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ELIZABETH OLSON, an individual, ) | No. 72865-2-I |
| ) | |
| Appellant, ) | DIVISION ONE |
| ) | |
| v. ) | |
| ) | |
| TUKWILA SCHOOL DISTRICT, ) | UNPUBLISHED OPINION |
| ) | |
| Respondent. ) | FILED: October 12, 2015 |

BECKER, J. — Elizabeth Olson appeals the order granting summary judgment in favor of the Tukwila School District and dismissing her premises liability action. Because the District has immunity under the recreational use immunity statute, we affirm.

This case arises from an injury that Olson incurred while at the athletic facility at Foster High School, a public high school in the Tukwila School District. Foster High School's athletic facility includes a running track. One day in April 2012, Olson visited Foster High School to use the running track as she had done on many occasions in the past. To get to the track, she took a different route than on prior occasions, one that required her to step down from the bleachers onto the track. Olson did not accurately perceive the rise that separated the

bleachers from the track surface. As she took the step, she fell and injured her ankle.

Olson sued the District. The District moved for summary judgment. The trial court granted the motion based on RCW 4.24.200-.210, the recreational use immunity statute. This appeal followed.

We review a grant of summary judgment de novo, performing the same inquiry as the trial court. Owen v. Burlington N. Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When the facts are undisputed, immunity is a question of law for the court. Camicia v. Howard S. Wright Const. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014).

Washington's recreational use immunity statute, RCW 4.24.210, defines circumstances under which a landowner is immune from suit for unintentional injuries to users:

> Except as otherwise provided in subsection (3) or (4) of this section, any public or private landowners . . . in lawful possession and control of any lands . . . who allow members of the public to use them for the purposes of outdoor recreation . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

RCW 4.24.210(1).

To be immune, the landowner must establish that the use (1) was open to members of the public (2) for recreational purposes and that (3) no fee of any kind was charged. Because recreational use immunity is an affirmative defense,

the landowner has the burden of proving it applies.  <u>Cregan v. Fourth Mem'l Church</u>, 175 Wn.2d 279, 283-84, 285 P.3d 860 (2012).

### USE BY "MEMBERS OF THE PUBLIC"

Olson does not dispute that use of the track is a recreational activity.  She does dispute whether the use was open to members of the public.  On that issue, <u>Cregan</u> is instructive.  There, the Supreme Court defined "public" as "'[o]pen or available for all to use, share, or enjoy.'"  <u>Cregan</u>, 175 Wn.2d at 285 (alteration in original), quoting BLACK'S LAW DICTIONARY 1348 (9th ed. 2009).  The court also explained that depending on the specific facts at hand, landowners may restrict some access and still qualify for recreational use immunity.  For example, a landowner that permits the public to hike or picnic may prohibit the public from hunting on its land.  A landowner may allow public access only during nonbusiness times.  A restriction that allows minor children on the land only if accompanied by an adult may also be appropriate.  In such cases, the land is still held open to the public.  <u>Cregan</u>, 175 Wn.2d at 285-86.

But the land is no longer open to the public if the landowner restricts access by discriminating against the user based on personal traits.  In <u>Cregan</u>, the landowner did not qualify for recreational immunity because the invitation to enter the land depended on the user's religious affiliation.  "When an owner excludes people in this way—that is, has a selective invitation to enter the land— the land is no longer open to the public, that is, for all to use or enjoy."  <u>Cregan</u>, 175 Wn.2d at 286.

3

The Tukwila School District limits the invitation to use the track in a number of ways that clearly pass muster under Cregan. For example, the track is open to the public only before and after school hours. One posted sign excludes weapons, drugs, alcohol, tobacco, motorized and wheeled vehicles, skateboarding, loitering, and criminal trespass. Another sign, while stating that wheelchairs are allowed, disallows pets (other than service animals), cleated shoes, and food and drink other than water. These restrictions do not, under Cregan, transform the facility into one that is not open to the public.

The closer question is a restriction limiting public use of the track to "Tukwila citizens" who have obtained an access card at the school district office.

The facility's main entrance gate has an access card reader. One posted sign limits access to "Authorized Card Holders Only," and another sign states that "Tukwila citizens" may obtain an access card. Olson contends that by reserving the right to deny access to Tukwila citizens, the District has issued a selective invitation.

There is no evidence in the record that the policy restricting use of the track to cardholders is based on a personal trait. Everyone in the Tukwila community had the same opportunity to obtain an access card. A District employee testified in a deposition that to obtain an access card, Tukwila citizens have to provide identification and complete a two-page application. Access cards are issued the same day. The employee testified that in her 12 years working for the District, she has never denied an application.

4

While it is possible to imagine circumstances under which it might be considered discriminatory to restrict use on the basis of where the user lives, based on the specific facts of this case, a reasonable trier of fact could only conclude that the facility was open to members of the public.

## A FEE OF ANY KIND

The other disputed element of recreational use immunity is whether the District allowed public use without charging "a fee of any kind therefor." The District did not charge Olson a fee to use the running track. Access cards were free of charge. The District did, however, occasionally charge fees for organizations and groups to use all aspects of the athletic facilities, including the track, artificial turf, announcer, control booth, custodian, field supervisor, police security, and scoreboard. For use of the track only, the District has charged fees on seven occasions in the past five years.

Olson contends that the charging of fees in these instances precludes immunity. She argues that the District is not immune if any fee was ever charged for use of the athletic facility. She relies on a case from the Oregon State Supreme Court, Coleman v. Oregon Parks & Recreation Department, 347 Or. 94, 217 P.3d 651 (2009). In that case, the plaintiff paid a fee for a campsite in a park. While in the park, he was injured on a bike trail where the public was free to ride. Oregon's immunity statute applied only if the landowner "makes no charge for permission to use the land." Former ORS 105.688(2)(a) (2001). The Supreme Court of Oregon denied immunity to the parks department because of the charge to use a campsite. Under Coleman, the landowner is entitled to immunity only if

5

there is no charge for using any part of the land. It makes no difference if the injured person was engaged at the time of the injury in a use for which no fee was charged. Coleman, 347 Or. at 102-03.

In Washington, on the other hand, a landowner can charge a fee for public use of a portion of its recreational land without necessarily losing immunity for public use of the remainder. Plano v. City of Renton, 103 Wn. App. 910, 914-15, 14 P.3d 871 (2000). The inquiry under our statute is whether landowners allow members of the public to use their lands for recreational purposes "without charging a fee of any kind therefor." RCW 4.24.210(1).

In Plano, the plaintiff was injured when she slipped and fell on a ramp leading to a moorage dock in a city park. Renton did not charge users a fee to enter the park or to use most of the park's facilities, but it did charge a fee for overnight moorage. We identified the issue as whether Renton charged a "fee of any kind" for use of the land where the injury occurred. The moorage was available for members of the public to use for purposes of outdoor recreation. "Under the statute, immunity is available only if Renton does not charge a fee of any kind for *such* use." Plano, 103 Wn. App. at 914 (emphasis added). Because Renton did charge a fee for overnight moorage and the plaintiff was injured while using the moorage, the city was not entitled to recreational use immunity.

In this case, the use in question is an individual's use of the running track, not an event that commandeered the entire stadium. Occasionally, fees were charged for the use of the track alone by organized groups on scheduled dates, a use that might involve the District in planning, supervision, and cleanup. These

6

fees included rental fees, security fees, custodial fees, utility fees, and administrative fees as would be appropriate. No fee was ever charged to individual members of the public who made unscheduled use of the running track. On the specific facts of this case, the District was not liable for unintentional injuries to "such users" because such use by individual members of the public was always free.

## LATENCY

Landowners who are immune are generally not liable for unintentional injuries. But an injured party may overcome immunity by showing that the injuries were sustained "by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted." RCW 4.24.210(4)(a); Jewels v. City of Bellingham, 183 Wn.2d 388, 390, 353 P.3d 204 (2015). An injury-causing condition is "latent" if it is not readily apparent to the recreational user. The condition itself, not the danger it poses, must be latent. The dispositive question is whether the condition is readily apparent to the general class of recreational users, not whether one user might fail to discover it. This is an objective inquiry. Jewels, 183 Wn.2d at 398.

Olson contends that the condition is latent because the concrete step where her injury occurred blends into the track, making the danger invisible from her perspective as someone coming down from the bleachers. She points out that there were no distinctive markings to call attention to the unexpectedly high drop-off. She admits that a step was expected but argues that she did not expect one so high.

7

Latency does not depend on the vantage point of the recreational user. Tennyson v. Plum Creek Timber Co., 73 Wn. App. 550, 555, 872 P.2d 524, review denied, 124 Wn.2d 1029 (1994). Latency is not based on the particular activity the recreational user is engaged in or the particular user's experience with the area from earlier visits or expertise in the specific recreational activity. The relevant inquiry is whether an ordinary recreational user standing near the injury-causing condition "could see it by observation, without the need to uncover or manipulate the surrounding area." Jewels, 183 Wn.2d at 400; see also Van Dinter v. City of Kennewick, 121 Wn.2d 38, 46, 846 P.2d 522 (1993) (when the condition itself is patent, the statute's requirement of latency is not satisfied by showing that the danger presented is latent).

There can be no dispute that an ordinary recreational user standing near the concrete step could see it. Photographs in the record confirm that the change in elevation between the bleachers and the track field would be obvious to the ordinary recreational user. See Jewels, 183 Wn.2d at 400. As a matter of law, the condition was not latent.

The District has met its burden of showing that the recreational use immunity statute applies. Olson has not presented facts that overcome this immunity. We need not address the District's alternative argument that summary judgment is appropriate on the basis that the District did not breach its duty.

Affirmed.

8

WE CONCUR:

Becker, J.

Spearman, C.J.    Schindler, J.