IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MARIA GUADALUPE GOMEZ MEDINA, and FREDERICO GOMEZ, individually, and MARIA GUADALUPE GOMEZ MEDINA, as guardian of BRENDA M. HERNANDEZ, a minor, | ) ) ) ) ) ) | No. 36096-2-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF WAPATO, a Washington municipality, and EVA CORTEZ and JOHN DOE CORTEZ, wife and husband, and JOHN DOE and JANE DOE SMITH 1-10, | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

SIDDOWAY, J. — It is an exception to immunity under Washington's recreational land use statute that an injury was sustained "by reason of a known dangerous artificial latent condition for which warning signs have not been conspicuously posted." RCW 4.24.210(4)(a). Appellants, the parents of a four-year-old girl whose fingers were injured when caught in the hinge of a road gate, argue that the hinge was such a condition. The hinge was not latent, however, and summary judgment dismissal of their personal injury action was appropriate. We affirm.

No. 36096-2-III
*Gomez Medina v. City of Wapato*

FACTS AND PROCEDURAL BACKGROUND

On a summer morning in 2011, the appellants' then four-year-old daughter was playing with her older sister and a friend on a metal gate that controlled access on a road into a city of Wapato park.[1] The four year old had not played on the gate before, but had seen other children play on it. While the girls were playing on the gate, the fingers on the four year old's left hand got stuck in the gate. How it happened is not clear; apparently the four year old wanted to climb on the gate at a time when her friend was pushing it.[2]

The four year old was airlifted to Harborview Medical Center. Surgeons were unable to restore blood flow to the tips of three of her fingers, leading to a partial amputation of the third, fourth, and fifth digits of her left hand. This personal injury action was later brought by her parents individually, and by the girl's mother, as guardian.

---

[1] Our use of general references to the children is out of concern for their anonymity, not a lack of sympathy. *See* General Order of Division III, *In re Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. 2018), http://www.courts.wa.gov/appellate_trial_courts/.

[2] When deposed, the four year old testified to going "on the door," which she later clarified was the gate:

> And we went on the door, and then [E., my friend], she was pushing the door, and I said stop because I was going to get on it. And she didn't hear me, so she pushed the door.
>
> And then, and then my sister went running and she went to tell my mom that I got my fingers caught on the gate. And my mom, she thought it was a scratch, so—I went inside, and my mom saw it.

Clerk's Papers (CP) at 33-34.

Following the conduct of discovery, the city moved for summary judgment, asserting immunity under the recreational land use statute. The parents opposed the motion, arguing that the exception to immunity for known dangerous artificial latent conditions applied. As photographs submitted to the trial court show, pins in the gate's posts go through holes on plates connected to the gate, which can thereby pivot. The pins are held in place by two fixed plates. Because the space between the fixed plates on the post is about twice the width of the plate attached to the gate, there is ample room on the pin for the gate to swing freely:



It is the parents' theory that the room on the pin for the gate to swing freely presents a hazard if children are playing on the gate. They contend that the weight of children climbing on the gate will cause the gate's connecting plate to move up, and when the children jump off the gate, the gate's connecting plate will drop back down, pinching any fingers that might be in the way. As their lawyer argued at the summary judgment hearing:

> When the kids hung on the gate, which was sticking out here, this hinge goes up because of the weight of the gate. Her fingers fit in there. This would be from the other side and from the side facing her. But it would go up, and you can see there's quite a bit of room there for it to go up. Her fingers would slip under there. When the kids let go of the gate, it was no longer in the—putting the force on the gate. It drops the hinge down, and that's what cut off the tips of her three fingers. And that's where it's latent, because, like I said, falling off the gate, if kids were swinging on it and thought that would be patent. If everyone could see that's an obvious danger. This you don't see until it's unlocked and the gate is moving, and then that mechanism goes up if you're hanging onto that gate.

Report of Proceedings (RP) at 6-7.

The trial court granted summary judgment to the city, explaining in its oral ruling that the condition was not latent:

> You can take a picture of it. And you can also see how it works in terms of how things rotate around. And I think it's obvious enough that if you stick your fingers in there, there is a risk that somehow they would be injured. Whether you could anticipate exactly what the injury process would be, I'm not sure. But I think it's obvious enough that there would be a risk to you if you stuck your fingers in there.

RP at 27-28. The appellants appeal.

ANALYSIS

The appellants argue on appeal that "the injury-causing condition was an unlocked gate whose hinge became dangerous **only** when it was left unlocked and was swung back and forth with a weight attached to it (i.e., kids hanging on the gate)." Am. Br. of Appellants at 8 (alteration in original). They argue that a recreational user of the park would not anticipate that the connecting plate could go up or down on the pin or, at the very least, it is a jury question whether the injury-causing condition is latent. *Id.* at 10.

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 278, 937 P.2d 1082 (1997) (quoting CR 56(c)). When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. *Id*.

The recreational land use statute, RCW 4.24.210, was enacted to encourage landowners to make their lands available to the public for recreational purposes by limiting the liability of the landowners toward users of those lands. It generally provides that public or private landowners who allow members of the public to use the land without charge for outdoor recreation are immune from liability for unintentional injuries to such users. RCW 4.24.210(1). Subsection (4)(a) of the statute provides, however, that

> [n]othing in this section shall prevent the liability of a landowner or others in lawful possession and control for injuries sustained to users by reason of a *known dangerous artificial latent condition* for which warning signs have not been conspicuously posted.

RCW 4.24.210(4)(a) (emphasis added). The city defends the trial court's decision granting summary judgment on the same basis argued in the trial court: that the gate is not a latent condition.

In its 2015 decision in *Jewels v. City of Bellingham*, our Supreme Court reaffirmed its earlier holding in *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 46, 846 P.2d 522 (1993) that "the adjectives 'known,' 'dangerous,' 'artificial,' and 'latent' each modify the term 'condition,' not one another." 183 Wn.2d 388, 391, 353 P.3d 204 (2015). "The condition itself, not the danger it poses, must be latent." *Id.* at 398. "[A] landowner will not be held liable where a 'patent condition posed a latent, or unobvious, danger.'" *Cultee v. City of Tacoma*, 95 Wn. App. 505, 522, 977 P.2d 15 (1999) (quoting *Van Dinter*, 121 Wn.2d at 46). The question is not whether the appellants' four-year-old child failed to observe the condition, but whether the condition is readily apparent to the general class of recreational users. *See Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 924, 969 P.2d 75 (1998) (issue is not whether one user might fail to discover it).

"Latency is a factual question, which must usually be decided by a jury. But 'when reasonable minds could reach but one conclusion from the evidence presented, questions of fact may be determined as a matter of law, and summary judgment is appropriate.'" *Cultee*, 95 Wn. App. at 522 (internal quotation marks omitted) (quoting *Van Dinter*, 121 Wn.2d at 47). In *Jewels*, the Supreme Court held that a condition is obvious (not latent) as a matter of law "if an ordinary recreational user standing near the injury-causing condition could see it by observation, without the need to uncover or manipulate the surrounding area." 183 Wn.2d at 400. Moreover, latency "is not based on the particular activity the recreational user is engaged in." *Id*.

In this case, an individual standing near the hinge can see that there is room on the pin for the connecting plate on the gate to move up and down, which would cause it to pinch anything located between that plate and the fixed plates on the post. Whether a recreational user would anticipate events that might cause the connecting plate on the gate to move up and down is not the issue. The fact that there is room for such movement to occur can be seen by observation, without the need to uncover or manipulate the surrounding area.

No. 36096-2-III
*Gomez Medina v. City of Wapato*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____    _____
Lawrence-Berrey, C.J.              Pennell, J.