# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

MERRILEE BERGE, a single woman,

        Appellant,

   v.

KITSAP COUNTY, a Municipal Corporation
organized under the laws of the State of
Washington,

        Respondent.

No. 56865-9-II

UNPUBLISHED OPINION

LEE, J. — Merrilee Berge appeals the superior court's summary judgment order dismissing her complaint against Kitsap County (County) on the basis of recreational immunity under RCW 4.24.210. Because there is a question of fact as to the condition that caused Berge's injury, we reverse the superior court and remand for further proceedings.

FACTS

On March 13, 2019, Merrilee Berge visited South Kitsap Regional Park to walk her dog. Berge was a regular park user. She left the park around dusk and drove toward the park entrance/exit, which was the same park entrance/exit she used to enter the park. It was lightly snowing at the time.

At the park entrance/exit, there was a gate consisting of two steel crossbar gate arms on both sides of the road. The gate arms could meet in the middle of the road to prevent park access when the gate was closed. The gate was painted dark green and had reflectors on the side of the

gate facing out of the park when the gate arms were in a closed position. There were no reflectors or other warning devices on the side of the gate arm that faced into the park when the gate arms were in a closed position.

When the gate arms were in an open position, the gate arms could be secured to posts with a lock or padlock in a position that was parallel to the roadway. The County has a policy to keep park gates open at all hours, even during nightly park closures. The only times the County would close park gates would be during unusual or unexpected circumstances, such as inclement weather or park construction. In her years as a park user, Berge has never seen the gate arms in a closed position.

As Berge exited the park, she crashed into a gate arm that had swung into the road. The gate arm went through Berge's windshield, struck her in the face, and then went out her driver side window. Berge sustained serious injuries, including a fractured maxilla and facial scarring. According to Berge, the gate arm had been angled over the road such that the arm pointed straight at her car, and she could not see the gate against the forest backdrop and fading light.

Kitsap County Deputy Sheriff David Robertson Corn responded to the accident. Deputy Corn looked for a padlock in the area to determine if there was an explanation for why the gate arm had swung into the road. He did not find any padlock nor could he determine what caused the gate arm to become unsecured. The other gate arm was secured with "a locking mechanism that kept it locked in the open position." Clerks Papers (CP) at 143. Deputy Corn noted that because it was dusk, the gate in the roadway would have been difficult to see. Additionally, Deputy Corn observed that Berge's headlights were on and, based on tire tracks in the snow, there was no evidence that Berge's vehicle left the roadway.

2

Richard Becerra, another park user, was at South Kitsap Regional Park the evening of Berge's accident. Becerra had used the same entrance as Berge. When Becerra arrived, both gate arms were fully open and not in the roadway. Becerra was in the park for approximately an hour, running in circles around it. While on his run, Becerra passed the gate a couple times. Each time he passed the gate, the gate was fully open. After his run, Becerra spoke with Berge briefly in the parking lot, after which Berge left in her car. Becerra then heard a crash; he ran to investigate and discovered that Berge had collided into the gate arm. Becerra noted that the other gate arm had a lock which secured it to a post on the side of the road, but the gate arm that Berge crashed into did not.

The County owns, operates, and maintains South Kitsap Regional Park. The park is open to the public without any costs or fees. South Kitsap Regional Park is a "'seven-day-a-week'" park, meaning at least one parks department member is assigned to visit the park and perform maintenance every day. CP at 41.

On the day of Berge's accident, John Reyes, a "'Parks Ambassador,'" was assigned maintenance for South Kitsap Regional Park. CP at 44. Reyes' duties included checking park conditions, entrances, parking lots, and roadways. When checking entrances and roadways, Reyes conducted a "visual[] scan" for anything that might be unusual or pose a safety concern. CP at 45. Reyes did not recall seeing anything unusual that day and noted the gates were fully open. The record does not reflect if Reyes checked that the gates were secured. Reyes completed his rounds before 3:00 p.m.

The County had never received any reports or complaints of unsecured gates or gates in the roadway in South Kitsap Regional Park on or prior to March 13, the day of Berge's accident.

3

Images from Google Earth Street View approximately eight months before Berge's accident appear to show gate arms that are unsecured.

In October 2021, Berge filed a complaint against the County for damages. The County asserted a defense based on recreational use immunity under RCW 4.24.210 and moved for summary judgment dismissal of Berge's complaint.

At the summary judgment hearing, the parties disagreed whether an exception to recreational immunity applied. Specifically, the parties disagreed whether Berge's injuries "were caused by a known[,] dangerous, artificial, latent condition." Verbatim Rep. of Proc. (VRP) at 6. Berge argued the County was aware of the "camouflaged nature" of the gate, that it was unsecured and lacked any conspicuous warning signs, posing a danger to park users. VRP at 14. The County asserted that it was immune from liability because it did not have the requisite knowledge for the exception to apply. Specifically, the County argued that there was no genuine issue of material fact that it lacked knowledge or any notice that the gate arm was unsecured or that the gate arm had moved into the roadway. The County stated, "[I]n this case, the County's really only contesting the known part." VRP at 7. The superior court granted the County's motion for summary judgment and dismissed Berge's complaint.

Berge appeals.

ANALYSIS

A.  STANDARD OF REVIEW

Appellate courts review summary judgment orders de novo. *Lockner v. Pierce County*, 190 Wn.2d 526, 530, 415 P.3d 246 (2018). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter

4

of law." CR 56(c). Courts consider all facts and make all reasonable inferences in the light most favorable to the nonmoving party. *Schwartz v. King County*, 200 Wn.2d 231, 237, 516 P.3d 360 (2022). Here, the nonmoving party is Berge.

B.     RECREATIONAL IMMUNITY

1.     Legal Principles

Generally, a landowner may be liable for injury caused by a condition on their land if the landowner (1) knows or should have known of the condition, and (2) should realize that it involves an unreasonable risk of harm to invitees. *See Egede-Nissen v. Crystal Mountain, Inc.*, 93 Wn.2d 127, 132, 606 P.2d 1214 (1980) (public invitee); *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 612, 486 P.3d 125 (2021) (business invitee). Local governments, such as counties, are liable for injuries sustained on their property to the same extent as any other landowner. *Schwartz*, 200 Wn.2d at 237. However, Washington has enacted a recreational use immunity statute "to encourage owners . . . of land and water areas . . . to make them available to the public for recreational purposes by limiting their liability." RCW 4.24.200.

Under RCW 4.24.210, any public or private landowner who allows members of the public to use their land for recreational purposes without charging a fee are immune from liability for unintentional injuries that occur. RCW 4.24.210(1) states, in relevant part, that "any public or private landowners . . . who allow members of the public to use [their land] for the purposes of outdoor recreation, which term includes, but is not limited to . . . fishing, camping, picnicking, swimming, hiking, . . . without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users." *See also Lockner*, 190 Wn.2d at 532 ("To qualify for immunity under RCW 4.24.210, the landowner must establish that the land at issue was (1) open

5

to members of the public (2) for recreational purposes and that (3) no fee was charged."). "Recreational use immunity is an affirmative defense, so the landowner bears the burden of proving entitlement to that immunity." *Schwartz*, 200 Wn.2d at 238. Here, the parties do not dispute that RCW 4.24.210 applies because South Kitsap Regional Park is open to the public for recreational purposes for no fee.

RCW 4.24.210 also provides an exception to a landowner's immunity from liability: when an entrant sustains injuries from a known, dangerous, artificial, latent condition for which there are no conspicuous warning signs, the landowner is liable. RCW 4.24.210(4)(a); *Van Dinter v. City of Kennewick*, 121 Wn.2d 38, 42-43, 846 P.2d 522 (1993). Known, dangerous, artificial, and latent all modify "condition," not one another, "so all must be present for the exception to apply." *Schwartz*, 200 Wn.2d at 239. The landowner need only show that the injury-causing condition lacks just one of the four characteristics to be immune from liability. *Id.*

An "injury-causing" condition is a "specific object or instrumentality that caused the injury, viewed in relation to other external circumstances in which the instrumentality is situated or operates." *Ravenscroft v. Wash. Water Power Co.*, 136 Wn.2d 911, 921, 969 P.2d 75 (1998). The condition cannot be viewed in isolation from its surroundings. *Van Dinter*, 121 Wn.2d at 43. Identifying the condition is a fact-specific inquiry, and if there is a dispute, the determination of the condition is for the trier of fact. *Swinehart v. City of Spokane*, 145 Wn. App. 836, 846, 187 P.3d 345 (2008); *accord Van Dinter*, 121 Wn.2d at 44 ("Identifying the condition that caused . . . injury is a factual determination."). Once the condition has been identified, courts then assess whether that condition was known, dangerous, artificial, and latent. *Van Dinter*, 121 Wn.2d at 44.

6

2.      Injury-Causing Condition

Berge argues that the unsecured status of the gate arm, along with its lack of reflectors or warning signs, was the condition that caused her injuries. The County argues that the placement of the gate arm in the roadway, not its unsecured status or lack of reflectors, caused Berge's injuries. We hold that there remains a question of material fact as to what condition caused Berge's injuries.

The injury-causing condition is a fact-specific inquiry and cannot be viewed in isolation from its surroundings. *Id.* at 43-44. In *Van Dinter*, the plaintiff was injured when his eye struck the antennae of a caterpillar-shaped piece of playground equipment. *Id.* at 40. The Supreme Court held, based on the facts specific to a stationary piece of playground equipment and its surroundings, that the injury-causing condition was the caterpillar's placement within the playground, not the caterpillar itself. *Id.* at 44.

Here, there is no question and the parties do not dispute that Berge was injured by the presence of the gate arm in the roadway. But there is a question of fact as to whether the gate arm in the roadway, the absence of a securing mechanism on the gate arm, and/or the lack of reflectors on the gate arm were the injury-causing condition or conditions. That issue cannot be resolved on summary judgment.

Here, there is no evidence that there had been any other incidences related to unsecured gates despite the gate arm being unsecured. Thus, it would be reasonable to conclude that the unsecured status of the gate arm is not the injury-causing condition.

On the other hand, the evidence also shows that the gate arm that swung open and injured Berge was unsecured while the other gate arm was secured with a locking mechanism in the open

position off of the roadway. Thus, it would be reasonable to conclude that the County's failure to secure a gate arm that can swing into the road as the "injury-causing condition," especially when the gate arm had no reflectors or warning signs. The fact that the gate arm that Berge crashed into was unsecured is all the more salient because the gate arm on the other side of the road *was* secured with a lock. Thus, there remain questions of material fact for the trier of fact to resolve. *See Swinehart*, 145 Wn. App. at 846.

  3.  Actual Knowledge

Until the factual issue of the "injury-causing condition" has been resolved, there can be no determination of whether the recreational use immunity exception applies because the County knew about the injury-causing condition. *See Van Dinter*, 121 Wn.2d at 44. However, the County argues that even if the injury-causing condition was the gate arm being unsecured, there is no evidence that the County had actual knowledge that there was no padlock or that the gate arm had become detached because "there is no evidence to indicate when the padlock might have been removed from the post, how long the padlock had been removed, how it was removed, why it was removed, who removed it, etc." Br. of Resp't at 38-39. We disagree.

A landowner must possess actual knowledge of a condition to meet the "known" element of the immunity exception. *Nauroth v. Spokane County*, 121 Wn. App. 389, 393, 88 P.3d 996 (2004). "The plaintiff must 'come forward with evidentiary facts from which a trier of fact could reasonably infer actual knowledge, by a preponderance of the evidence.'" *Id.* (quoting *Tabak v. State*, 73 Wn. App. 691, 696, 870 P.2d 1014 (1994), *abrogated on other grounds by Jewels v. City of Bellingham*, 183 Wn.2d 388, 353 P.3d 204 (2015)). Actual knowledge may be established by

circumstantial evidence. *Id.* A landowner need only know the condition exists, not that the condition is dangerous, artificial, or latent. *See Van Dinter*, 121 Wn.2d at 46.

Here, the County is correct that the record is void of any evidence that the County had actual knowledge there was no padlock securing the gate arm to the post. However, there is no evidence that there *ever* was a padlock on the gate arm during the period of the County's ownership of the park. Because the County had been in possession of the park for 15 years, we can reasonably infer that the County knew that there was no padlock securing the gate arm.

In addition, the evidence shows the gate arm unsecured eight months before Berge's accident. And Deputy Corn could not find any padlock in the area of the gate arm when he responded to the incident involving Berge. Also, the County assigns a parks department member to visit and perform maintenance at the park every day, which includes checking the entrances at the park. From this evidence, a reasonable inference can be drawn that there was no padlock securing the gate arm and that the County had actual knowledge of that condition. These inferences create a genuine issue of material fact as to whether the County had actual knowledge that the gate arm was not secured.

CONCLUSION

Because genuine issues of material fact exist, we reverse the superior court's summary judgment order dismissing Berge's complaint and remand for further proceedings.

No. 56865-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, P.J.

Che, J.